THE COUNTY OF PLATTE, PLAINTIFF IN ERROR, v. LEANDER GERRARD AND MICHAEL WHITMOYER, DEFENDANTS IN ERROR.

1. County Commissioners: EMPLOYMENT OF ATTORNEY. Previous to the passage of the act of March 1st, 1879, entitled "An act concerning counties and county officers," the provision of the statute, making it the duty of the district attorney to "without fee or reward (other than his salary) give opinions and advice to

the board of county commissioners of any county in the district" etc., was exclusive of all other lawful methods of obtaining opinions or advice at the public expense.

2. ——: ——. A contract entered into by a board of county commissioners with a firm of attorneys, by the terms of which in consideration of the advice and services of said attorneys rendered to the county, to enable such commissioners to lawfully place upon the tax list of said county certain lands which had been erroneously left off of the assessment roll by the assessors, said commissioners agreed to pay said attorneys a sum equal to 25 per centum of all taxes, which should be collected on said lands for the year in question, *Held*, void as against public policy.

ERROR to the district court for Platte county. The action there was brought by Gerrard and Whitmoyer. The cause was sent to a referee who reported the following facts:

*First.* That in the year 1873, the Burlington and Missouri River Railroad Company were the owners of certain lands in Platte county, Nebraska, subject to taxation, which were omitted from the tax rolls for said year 1873.

*Second.* That in the month of September, or October, 1874, plaintiffs and the board of county commissioners of said county, while in session, entered into a contract or agreement, by the terms of which the plaintiffs agreed to take charge of the matter and see to having the said lands properly placed upon the tax rolls and tax list for the taxes for the year 1873, plaintiffs to see to the issuing of the proper notice, and to give such directions and advice to the proper officers as should be necessary to secure such results, and that in consideration therefor the board of county commissioners in behalf of said county agreed to pay to plaintiffs for such services, twenty-five per cent. of the amount of such taxes, for the year 1873, payable only upon the event of such taxes being collected according to law.

*Third.* That plaintiffs were at said time regular practicing attorneys in said county.

*Fourth.* That plaintiffs fully complied with and performed their part of the contract.

*Fifth.* That such action was had under the law that the said lands were placed upon the tax lists for the taxes for the year 1873.

*Sixth.* That said taxes remaining unpaid, the said lands were on the 20th day of May, 1880, sold to the county of Platte for such delinquent taxes, under the provisions of an act approved February 27th, 1879, entitled "An act to authorize certain county and municipal officers to purchase real estate at tax sale," that certificates were issued by the treasurer in due form to said county, and that the amount expressed in said certificates for the taxes of said year 1873, amounted to $5,766.83 and that soon thereafter and prior to the commencement of this action the county commissioners of said county sold and assigned said certificates to one Peet, and realized thereon sixty per cent. of said sum of $5,766.83, which equals $3,460.09, which sum was paid to the treasurer about April 1st, 1880.

*Seventh.* If said contract is valid, plaintiffs are entitled for their services under said contract to the sum of $1,441.70.

*Eighth.* That during the years 1873 and 1874, M. B. Hoxie was the district attorney for the 3d judicial district of Nebraska. That said Platte county was within said district. That the court duties devolving upon said district attorney rendered it impossible for the county commissioners and other county officers to procure the services and advice of the district attorney in the matters for which plaintiffs services were rendered, and that it was important that the said commissioners should have assistance and direction in said matter in order to protect the rights and interests of said county.

And as conclusions of law the referee found:

*First.* That the contract was one which the board of

county commissioners were not authorized to make on behalf of the county.

*Second.* That judgment should be rendered against plaintiffs.

On hearing in the district court, before Post, J., the conclusions of law of the referee were set aside and judgment rendered against the county for $1,441.70.

*Charles A. Speice* and *Byron Millett,* for plaintiff in error, cited Gen. Stat., 237, sec. 33. *Cuming County v. Tate,* 10 Neb., 193. *McDonald v. Supervisors,* 41 Wis., 642. *Montgomery v. Supervisors,* 22 Wis., *69. *Butler v. Milwaukee,* 15 Wis., *493. *Case v. Shawnee County,* 4 Kansas, 511. *Vise v. Hamilton County,* 19 Ill., 78.

*Whitmoyer, Gerrard & Post,* for defendants in error.

The county commissioners had authority to make the contract. Note the language of our statute: "To sue and be sued." "To make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate or administrative powers." Words could scarcely have been used more general in their scope and effect or conferring more extended powers upon the several counties as bodies corporate or politic. The power to employ counsel, as a necessary incident to the power to sue and be sued, is expressly affirmed by the following authorities: *Dillon on Municipal Corporations,* 1st Ed., 399. *Smith v. Mayor,* 13 Cal., 531. *Hornblower v. Dunden,* 35 Cal., 670. *Ellis v. Washoe County,* 7 Nevada, 293. *Tatlock, et al., v. Louisa County,* 46 Iowa, 138. *Thatcher v. Jefferson County,* 13 Kansas, 182.

Cobb, J.

While we by no means admit the correctness of the proposition laid down by counsel for the defendants in error, to-wit: That "the power to employ counsel on the

part of a board of county commissioners is a. necessary incident to the power to sue and be sued," we might safely do so, without by any means approving of the judgment in this case.

This was an action not for the value of professional .services, nor yet upon a contract to pay an agreed price ·or sum for certain professional services; but upon a contract to pay to the defendants in error one-fourth part of such taxes as might be collected upon certain lands, situated in said county, in consideration of the said defendants in error having "undertook and agreed to act .as attorneys for said defendants, (the board of county commissioners of Platte county,) in a proceeding to collect the taxes on said lands, from said railroad company, in said year, and to take all necessary steps in the name of said county, and perform all other acts as such attorneys, which might be necessary to confer jurisdiction on said defendants as such commissioners, to order said lands placed on the tax list of said county for said year, and to legally assess the said lands for said year 1873," etc. It is therefore not to the statute giving counties the power to sue and be sued, that we should look for the authority on the part of the county commissioners to make a contract of this character, The county was not sued, and it neither expected to be, nor did it contemplate suing anybody. But if we expect to find any such authority, should we not rather look to the statute then in force, empowering counties to levy and collect taxes? We think so. But it is not ·claimed, nor can it be, that the revenue laws then in force conferred any such power.

The revenue laws, as well those then as now in force, impose important duties upon the board of county commissioners, upon assessors, clerks and treasurers; many of these duties are such as to call for a high order of business capacity, all of which is, or should be, duly

considered by the people in selecting persons to fill these important trusts. And yet the legislature had foreseen that occasions might arise when these boards and officers would, in order to the proper discharge of their duties, require legal advice, and ample provision had been made to meet this contingency.

Section 16 of chapter 7, Compiled Statutes, makes it the duty of the district attorney to "without fee or reward, (other than his salary,) give opinions and advice to the board of county commissioners of any county in the district, and other officers of the state or county, upon all matters in which the state or county is a party, or may be interested."

Again by sec. 18, district attorneys are authorized "in his discretion to appoint one or more deputies," etc.

The proposition that, because the district attorney might have been otherwise officially engaged, the board of county commissioners might seek advice from other attorneys, and pay for it out of the public money, is, in our opinion, inadmissible. It was a question for the consideration of the legislature, whether, owing to the rapid increase of the population of the state, and the consequent augmentation of the official duties 'of the district attorneys, as imposed by law, some measure of relief was not necessary for these officers. This the legislature was not slow to perceive; hence the provision contained in sec. 47 of Art. I., of chapter 18, Compiled Statutes. But at the date of the transaction involved in the case now under consideration, the law-making power having imposed upon the district attorneys the duty of giving opinions to and advising boards of county commissioners, such regulation and method was binding upon the courts and all boards and officers whatever, and was exclusive of all other lawful methods of obtaining opinions or advice at the public expense by boards of county commissioners.

But let us suppose this not to have been the case, that the board of county commissioners might at their discretion employ counsel of their choice, to advise them as to their duties, and pay therefor either an agreed price, or a *quantum meruit* out of the public funds; does it follow that such board might, as a mode of compensation for such advice, lawfully bargain away an aliquot part of such of the public revenues as might be affected thereby? And making such compensation contingent upon the success of the measures taken under such advice? We think not. The giving of contingent fees, or compensation for services rendered to the public, is contrary to sound policy.

It is the spirit of our laws to collect from the people only such amount of money by taxation as may be sufficient to a certain and economical support of the government in all its branches, and to require the strictest accountability therefor. The law has provided for all officers and public servants, having to do with the levy and collection of taxes, a fixed salary, depending in no degree upon the amount of taxes actually collected, and while in some of the Latin nations of Europe there was formerly, and may yet be, a system of farming out the collection of the public revenues, we do not think that such a thing was ever known, or would be tolerated, in any country inhabited by an English speaking people.

The referee did not return the testimony in the case, but looking only to the cause of action as set out in the petition of the plaintiffs in the court below, and the law of February 27th, 1873, we fail to see any equality between the services performed, agreed to be performed or required, and the compensation claimed therefor. Indeed, we can scarcely conceive of a board of county commissioners and a county clerk lacking of sufficient ability to understand and execute the law in question, without legal advice or opinion from any source.

We are therefore of the opinion that the contract, as set out in the pleadings and found by the referee, was one which the board had no legal power to make, and which cannot be upheld by the courts.

The judgment of the district court is reversed, and the conclusion of law found by the referee affirmed.

JUDGMENT ACCORDINGLY.

MAXWELL, J.

I concur in the judgment of reversal in this case upon the ground that the services rendered by the defendants were not rendered by* them in a professional capacity, the only services being to induce the county commissioners to do their duty by placing certain lands on the assessment roll. But, in my opinion, the board of county commissioners have authority, independently of the statute, to employ an attorney in a proper case.

A county is a *quasi* corporation, and the commissioners the agents by which its business is conducted. If the county is sued, may the commissioners not defend, nay, is it not their duty to make any defense to which the county is entitled, and for this purpose to employ an attorney? The district attorney is not the attorney of the county. He is paid by the state. His duties are such that it would be impossible for him to prosecute or defend the various actions in which the counties in his district are interested. Then, suppose the county has a cause of action existing in its favor, against an individual or individuals, may it not employ an attorney to prosecute the same? I think it may, as a corporation, employ the necessary counsel at a reasonable compensation, to advise the commissioners, or prosecute or defend actions in which the county is interested.

In the case of *Cuming County v. Tate*, 10 Neb., 193, the services were not rendered for the county, but for the district attorney, and this court held that there could be

no recovery against the *county* for such services, but that rule would not apply where legal services were rendered for the county.