THE BOARD OF COMMISSIONERS OF STAFFORD COUNTY *et al.* v. THE STATE OF KANSAS, *on the relation of C. H. Higgins, County Attorney.*

1. COUNTY BOARD—*Place of Meeting.* In a county without a court house, it is the duty of the county clerk to attend the sessions of the board of county commissioners in any suitable room at the county seat the board may designate.

2. ———— *Donation of Court House—Acceptance.* The citizens of a county-seat town donated some lots and a building thereon to the board of county commissioners for a court house, and the board, under protest, held its session in the office of the county clerk which he had taken up therein. *Held,* A sufficient acceptance of the building as a court house by the county.

3. COUNTY PROPERTY, *Care of; Invalid Protest.* The board of county commissioners has the care and charge of the county property, and when it occupies the county clerk's office under its protest, such protest is without legal effect, being the protest of a superior to a subordinate officer.

### *Error from Stafford District Court.*

ACTION brought in the Stafford district court, to enjoin the defendant board of county commissioners from considering

a certain petition filed with the county clerk praying for an election for the removal and relocation of the county seat of Stafford county. A temporary injunction was granted by the district judge. A motion to dissolve said injunction was duly filed on the part of the board of commissioners, and afterward the parties entered into a written stipulation, which, omitting the first and second items, which have reference solely to the trial in the district court, is as follows:

"*Third.* Is it necessary, under the law and facts, that a petition should contain two-thirds of the electors of Stafford county whose names appear on the last assessment-roll, or three-fifths of them only?

"If the court decides that it requires a two-thirds petition, final judgment of the court shall be for the plaintiff for costs, and the injunction hereinbefore granted shall be made perpetual. If the court shall decide under the law and facts that only a three-fifths petition is necessary, the injunction may be dissolved, and a mandatory order may issue to the defendant board of county commissioners of Stafford county, commanding and directing them to proceed with the consideration of the petition, requiring the board in determining the total number of electors in the county to count every name of elector appearing on the real-assessment rolls of 1886, and the additional real-estate rolls of 1887, the personal-property assessment-rolls of 1886, and they must also consider the personal-property statements of 1887; and this the board shall do by a personal examination of such rolls and statements; and when the board decides to consider such statements and rolls, such board shall give both sides a fair opportunity to be heard. The board shall be required to consider the remonstrances filed, and shall deduct from the petition the name of each elector thereon who had signed the petition, unless such elector shall signify his desire be to counted as a petitioner; that is, the last expression of the elector, made before final action of the board, shall be taken and considered by said board.

"*Fourth.* The following are the facts upon which this case shall be tried and decided, to wit:

"1. The town of St. John was made the temporary county seat of Stafford county upon its organization in 1879, and in April, 1883, was made permanent county seat by a vote and election held for that purpose. No election has been held in

Stafford county since that time for the removal or relocation at such county seat. The town of St. John became a city of the third class in 1885.

"2. Certain citizens of the city of St. John, for the purpose of providing a court house and county offices for Stafford county, built upon certain lots situated in the city of St. John a brick house two stories high, containing rooms suitable for the various officers of Stafford county, and containing a court room, at an expense to such citizens of over thirteen thousand dollars; and the cost of the lots upon which the same is situate is not over thirteen hundred dollars. After its completion the then owner of such lots, with the full knowledge and concurrence of its citizens, executed and acknowledged a proper deed to the board of county commissioners of Stafford· county of the said real estate upon which said building was erected. This deed was made upon April 6, 1887, and contained the following clause: 'This deed is made as a donation and gift to Stafford county, to be used as court house and offices for the county officers.' In other respects said deed was a general warranty deed.

"3. On the date last aforesaid, said deed was delivered to the county clerk of Stafford county, who on the date last aforesaid filed the same for record in the office of the register of deeds of Stafford county, and said clerk has ever since had the same in his possession.

"4. No delivery of said deed was made to the board of county commissioners. Said board has not accepted the same, and never authorized the county clerk to receive, accept, or record the same, and at no time authorized the moving of the county offices, or their records, into the building.

"5. Prior to the recording of the deed, the county offices were kept in another building provided by the board. The citizens of St. John moved the records into said building without any authority from the board, and the county officers moved into the said building, some without protest and some under protest; and upon recording of said deed, the district court used the room in said building at the June and November terms, 1887. The county clerk having moved into the building with the records of the county, in April, 1887, the county board, under protest, went into his office, and held its session in such room under protest.

"6. On the 10th of April, 1887, the mayor of St. John officially notified the board in writing, that the house had been constructed for a court house, and the deed to the county

had been made and filed for record. The board ordered the same spread on its records of proceedings, but has at no time taken any action thereon.

"7. On 4th March, 1887, there was approved, and on 10th March, 1887, there was published, an act of the legislature of the state of Kansas, entitled 'An act to authorize the city of St. John, Stafford county, to vote bonds not to exceed fifteen thousand dollars to reimburse the citizens of said city for sums advanced by said citizens to aid in the construction of a court house at the city of St. John, in Stafford county, which law [act] is hereby referred to and made a part of this agreement. Under this act an election was called an held in the said city of St. John, in May, 1887, at which election the proposition carried by a majority of the voters voting said election. The proposition was declared carried, and fifteen thousand dollars of the bonds of said city were thereupon issued at the proper time. At the July session of the board of county commissioners, a tax was levied to pay the interest on said bonds and to provide a sinking fund for the payment of the same; and said bonds were duly registered, and have since been disposed of on the market, which was done in strict compliance with said law [act.]

"8. The petition for the election for the removal of the county seat presented to the board of county commissioners does not contain the names of two-thirds of the electors of said county as shown by the last assessment-rolls."

On February 6, 1888, upon the agreed statement of facts, the court found for the plaintiff, and adjudged that the temporary injunction herein be made perpetual, and that the plaintiff recover of defendants the costs of this action. The defendants bring the case to this court.

*Leland J. Webb, Hillis & Halveson,* and *W. C. Webb,* for plaintiffs in error.

*J. W. Rose,* and *Waters, Chase & Tillotson,* for defendant in error.

Opinion by HOLT, C.: Of the many questions raised by the parties in their briefs, we shall examine but a single one; we believe it is decisive of this case. It is, whether there was an acceptance by the county of Stafford of the building erected

by the citizens of the city of St. John for a court house of that county. The simple fact of donating the lots and building without an acceptance on the part of the county would not make it county property. Was there an acceptance of this building by the county? In the agreed statement of facts we find that the district court had held two terms in the building, and, excepting the county commissioners, that the county officers, some willingly and others under protest, had occupied it for their offices; that the county board was notified by the mayor of St. John that the building had been constructed for a court house, and a deed made to the county and filed for record, and such notice was spread upon the records of the proceedings of the county board; and that the county board went into the office of the county clerk in the building, and held its session in that room.

In this connection, let us examine the powers and duties of the board of county commissioners and of the county clerk concerning the property of the county and the places of business or offices of the county officials, and also their official relations to each other. The statute provides, in relation to county commissioners, that the county board shall have power "to make such orders concerning the property belonging to the county as they may deem expedient; to have charge of the county buildings; and where there are no county buildings, to provide suitable rooms for county purposes," and "to represent the county and have the care of the county property, and the management of the business and concerns of the county in all cases where no other provision is made by law." (Comp. Laws of 1879, ch. 25, § 16.) These provisions are plain and explicit, and need no elucidation so far as this case is concerned. The county commissioners had charge of county property; they had full freedom and power to hold their sessions wherever they saw fit, provided they were held at the county seat; they had the power to order the county clerk to come to them, they were not compelled to go to his office.

In relation to the duties of county clerk, it is provided that he shall attend the sessions of the county board of commis-

sioners, keep the seals, records and papers of the said board, record all the proceedings of said board, make regular entries of all decisions concerning money. (Comp. Laws of 1885, ch. 25, §§ 43, 44.) In *The State v. Allen*, 5 Kas. 219, Mr. Justice VALENTINE, speaking of the duties and powers of the county clerk, says:

"It is the duty of the county clerk to attend the sessions of the board of county commissioners, keep a record of their proceedings, sign the record, and attest the same with the county seal. He is merely a clerk in such cases for the board, having no supervisory control over and not responsible for their actions."

In the agreed statement of facts, it is set forth that the board of county commissioners held its session in the county clerk's office under protest. If it was to the county clerk, it would be a novel and incongruous act, for the county clerk was under the authority and direction of the county board: it would have been the protest of a superior to an inferior — a strange inconsistency, a contradiction of terms, a legal impossibility. This is a case where the actions of the county commissioners must govern, and are more important than the excuses they offer or any reasons they may give for their course of procedure. It is plain that if they occupied it as their place of meeting, it was an acceptance of the building as a court house. They also levied as a board, taxes to pay interest upon the bonds voted by the city of St. John, as provided by chapter 73, Laws of 1887.

This disposes of the case, and we recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.