THOMAS BROWN *et al., as County Commissioners, etc., et al.,* v. THE STATE OF KANSAS, *ex rel. C. C. Coleman, as Attorney-general.*

No. 14,459.    (84 Pac. 549.)

SYLLABUS BY THE COURT.

COUNTY COMMISSIONERS—*Contract for Publication of Personal-property Statements Held Ultra Vires.* The board of county commissioners of Barton county made a contract with the publisher of the official county paper to publish a list showing the personal-property statements of all persons in the county returned by the assessors, with the amount of personal property listed or assessed against each person, for which publication and the mailing of a copy to each person

named therein the board agreed to pay the publisher $180. The contract was entered into and carried out in good faith. *Held*, that the contract was *ultra vires* and void, and that a permanent injunction was properly granted in a suit commenced on the relation of the attorney-general to enjoin the payment of the contract price.

Error from Barton district court; JERMAIN· W. BRINCKERHOFF, judge. Opinion filed February 10, 1906. Affirmed.

### STATEMENT.

THE board of county commissioners of Barton county entered into a contract with the firm of Stoke & Feder, in the city of Great Bend, to publish in the *Barton County Democrat*, the official county paper, a list showing the name of every person in the county making a personal-property statement for the year 1904, the total amount which each person returned to the assessors for taxation, and a list of each person · claiming personal property exempt from taxation, for which publication, and the mailing to each person named in the list one of the papers containing the same, the board agreed to pay to the firm of Stoke & Feder the sum of $180. W. E. Stoke was the public printer of Barton county, elected and qualified under chapter 101 of the Laws of 1899. The contract was entered into in good faith, and was carried out in full, and a bill was presented to the 'board of county commissioners for the contract price agreed upon. This suit was commenced on the relation of the attorney-general to enjoin the payment of the contract price, the county attorney of Barton county having declined to bring the suit. From the judgment granting a permanent injunction defendants bring the case here for review.

*James W. Clarke,* and *Osmond & Cole,* for plaintiffs in error.

*C. C. Coleman,* attorney-general, and *D. A. Banta,* for The State.

The opinion of the court was delivered by

PORTER, J.:     There is but one point necessary to consider in this case: Did the board of county commissioners have authority to make the contract in question? The county is a *quasi*-municipal corporation, and as such can exercise only those powers expressly conferred and such others as are necessarily or fairly implied in, or which are incidental to, the powers expressly granted. Beyond these it takes nothing by implication. It was said in *City of Leavenworth and others v. Norton and others,* 1 Kan. 432, 436, that the authorities to this effect are too numerous and too well known to need citation. (See, however, 7 A. & E. Encycl. of L. 926, 942; *Felker v. Elk County,* 70 Kan. 96, 78 Pac. 167.) The powers of the county generally are stated in section 1603 of the General Statutes of 1901, as follow:

"That each organized county within this state shall be a body corporate and politic, and as such shall be empowered for the following purposes: *First,* to sue and be sued; *second,* to purchase and hold real and personal estate for the use of the county, and lands sold for taxes as provided by law; *third,* to sell and convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interests of the inhabitants; *fourth,* to make all contracts and do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate or administrative powers; *fifth,* to exercise such other and further powers as may be especially conferred by law."

And in section 1605 it is provided that "the powers of a county as a body politic and corporate shall be exercised by a board of county commissioners." The express powers of the board are enumerated in section 1621. It is not claimed by plaintiffs in error that there is found anywhere in the statutes the express power to make the contract in question, but it is claimed that the power is necessarily implied from

the general and express powers conferred upon the board, and *Commissioners of Leavenworth Co. v. Keller*, 6 Kan. 510, is relied upon. There the authority of the board to make a contract with the register of deeds for the compilation of a tract-index of deeds was upheld, but the court found the power necessarily implied from the express power conferred by the first clause of section 1621 of the General Statutes of 1901, which reads: "To make such orders concerning the property belonging to the county as they may deem expedient." The records in the office of the register of deeds are county property. If by long use they should require rebinding the power to contract for that purpose would be clearly implied. If by long use the indexes should become worn so that the convenience of the public required new ones, or if the records had never been properly indexed, the board would have the implied power to provide what should be necessary. The contract here was not made with reference to any "property belonging to the county," and we must therefore look elsewhere for the implied power to make it.

In *Grannis v. Board of County Comm'rs*, 81 Minn. 55, 83 N. W. 495, a contract made by the board of county commissioners by which a person was employed to discover unassessed and untaxed personal property in such county, for which he was to receive one-half of all taxes paid into the county treasury as the result of his labors, was held *ultra vires* and void. The powers of counties and county boards in Minnesota appear to be much the same as in this state. There the county board has general charge and supervision of the county affairs, and general authority over its finances, and care of its property and rights. It was held that while the county was interested and concerned in the matter of the collection of taxes it was not charged with the duty of seeing to it that all such property was assessed and placed upon the tax-

Brown v. The State.

rolls, because those duties devolved upon other officers. The court said:

"The matter of unearthing and discovering property which has escaped taxation is not only not necessary to the exercise of the corporate powers of a county, but is beyond its express or implied authority." (Page 58.)

The supreme court of Iowa, in the case of *Disbrow v. Supervisors of Cass County*, 119 Iowa, 538, 93 N. W. 585, held a similar contract to be valid and binding upon the county. There was a statute, however, expressly providing that the board of supervisors should have power to appoint an attorney to prosecute an action to recover omitted taxes.

There is much conflict in the decisions with respect to the authority of county boards to contract for the ferreting out of unlisted property and for recovering taxes thereon, but the cases in general are of little assistance in determining the question here, for they often turn upon the existence of a special statute or upon powers of the county board granted by express provision of law. If the power existed here it must be implied from the general power referred to in the fourth clause of section 1603, taken in connection with the fifth clause of section 1621 and section 1646 of the General Statutes of 1901. The fourth clause of section 1603 reads as follows: "To make all contracts and do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate or administrative powers." The fifth clause of section 1621 is as follows: "To represent the county and have the care of the county property, and the management of the business and concerns of the county, in all cases where no other provision is made by law."

Section 1646 gives the board "exclusive control of all expenditures accruing, either in the publication of delinquent tax-lists, treasurer's notices, county printing, or any other county expenditures." These are

the sections of the statute which plaintiffs in' error mainly rely upon, except certain sections of the general tax laws which will be referred to hereafter.

The fourth clause of section 1603, *supra*, authorizes the county "to make all contracts and do all other acts in relation to the property and concerns of the county." The contract entered into did not relate to any property of the county. Did it relate to the "concerns of the county, necessary to the exercise of its corporate or administrative powers"? If it did the board had power to make it, unless limited by section 1621 or some other statutory provision, for the powers conferred upon the county are to be exercised by the board. It may be said that the county is greatly concerned that all citizens shall correctly list their personal property for the purpose of taxation, and this is true; and it is also true that the duty of citizens in this respect is often flagrantly disregarded and that the interests of the county suffer thereby. This general power conferred upon counties by the fourth clause of section 1603 must be construed, however, in connection with the fifth clause of section 1621, by which it is provided that the board shall have the "management of the business and concerns of the county, *in all cases where no other provision is made by law.*"

By reference to section 7599 of the General Statutes of 1901 we find that "other provision" has been made for correcting this evil, and that certain duties are imposed upon the board of county commissioners, and certain express powers conferred upon it in relation thereto. That section provides that after the assessment rolls have been returned the board of county commissioners is given certain powers for the correction of assessments, if it shall have reason to believe that any person has given a false statement to the assessor or that the assessor has not returned the full amount required by law to be assessed against

such person; and it may well be argued that if the
legislature intended to confer upon the board the
power to make a contract like the one in question, long
prior to the time the duties devolved upon the board
to act with reference to assessments of personal prop-
erty, it would have been found in section 7599, and
in clear, unmistakable terms. The provisions of this
section cover the whole subject of the inadequate list-
ing of personal property, as well as all the duties and
powers conferred upon the board of county commis-
sioners in reference thereto, and necessarily must be
held to limit the powers of the board in respect to
these particular "concerns of the county."

In *Coal Co. v. Emlen,* 44 Kan. 117, 24 Pac. 340, it
was held that the county commissioners, sitting as a
board of equalization, have no power to add to a per-
sonal-property statement as returned by the assessor
any property not already listed, for the reason that
there is no express power given them so to do; and
the court in the opinion comments upon the fact that
"there was no want of power properly lodged to en-
able the proper authorities to secure an assessment
of all the personal property of the plaintiff." (Page
122.) The same power referred to is still in exist-
ence and provided for in section 7599. The fact that
the subject is one otherwise fully provided for takes
it out of the scope of the fifth clause of section 1621,
because that clause has no application to cases where
provision is otherwise made by law.

Section 1646 of the General Statutes of 1901 gives
the board "exclusive control of all expenditures ac-
cruing, either in the publication of delinquent tax-
lists, treasurer's notices, county printing, or any other
county expenditures." The contract was not made
with reference to delinquent tax-lists or treasurer's
notices, and whether it is embraced in the term
"county printing" or "other county expenditures" is
the question involved in this case. If the board had

authority to make the contract, it was a lawful "county expenditure" and would naturally be classed in that case as "county printing." We conclude, therefore, that it does not fall within the implied powers of the board, necessary or incidental to any power expressly granted, for the reason that it does not involve the care or management of any property belonging to the county or any business or concerns of the county, except those for which provision has been otherwise made. The judgment is affirmed.

All the Justices concurring.