THE STATE OF KANSAS, *ex rel. C. C. Coleman, as Attorney-general*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DICKINSON.

No. 15,207.   (95 Pac. 392.)

SYLLABUS BY THE COURT.

1. CONTRACTS — *Collection of Taxes — Ultra Vires and Against Public Policy.*  A contract by which a board of county commissioners undertakes to employ a private person or firm to render services in aid of the collection of taxes, which services the statute makes it the duty of certain township and county officers to render, is *ultra vires*, against public policy, and void.

2. —— *Recovery upon a Quantum Meruit—Notice of Illegality.*  A person who has entered into such a contract with a board of county commissioners, and has, in part, rendered the specified services, is presumed to know the illegality of the contract and that his performance of the services is against public policy.  He cannot recover therefor on a *quantum meruit.*

Error from Dickinson district court; OSCAR L. MOORE, judge.  Opinion filed April 11, 1908.  Reversed.

STATEMENT.

M. W. Moir, in the name of M. W. Moir & Co., presented to the board of county commissioners of Dickinson county, Kansas, a written proposition as follows:

"GENTLEMEN—We propose to assist the proper officers of your county to discover taxable property subject to taxation in your county that has not been listed and assessed as required by law.

"For our services therefor we will charge your

The State v. Dickinson County.

county a sum of money equal to twenty-five (25) per cent. of the taxes paid into the county treasury of your county by reason of said discovery.

"We agree to commence said investigation within ninety (90) days from the date of our employment, and to continue said investigations with due diligence until the same is completed, commissions to be paid to us as fast as taxes are collected on omitted property disclosed by reason of said investigation. We ask that the county authorities use due diligence in the assessment and collection of any tax found to be due as found by this investigation.

"We also agree to file a bond acceptable to the county, in the sum of one thousand dollars, conditioned that we will faithfully and honestly discharge the duties of our employment.

Respectfully submitted,
                                    M. W. MOIR & CO.,
                                        Per M. W. Moir."

On the same day the board of county commissioners, all the members being present and in session, formally accepted the proposition and caused the contract to be entered at length upon the journal of the board, and all of the commissioners signed the journal entry. Moir soon thereafter entered upon the execution of the contract, and the proper county officers, through his assistance, collected about $4000 additional taxes.

The board of county commissioners had allowed a bill for the services of Moir under this contract when this suit to enjoin the board from performing the contract was commenced in the name of the state, on the relation of the attorney-general. The issues were made up and tried before the court, without a jury, and resulted in a judgment denying the injunction. The state, as plaintiff in error, brings the case here.

*Fred S. Jackson,* attorney-general, for The State; *G. W. Hurd,* of counsel.

*C. C. Towner, M. A. Gorrill,* and *F. D. Parent,* for defendants in error.

The opinion of the court was delivered by

SMITH, J.: Numerous errors are assigned, principally trial errors, but two questions of law will determine the case, viz.: (1) Was the contract a valid contract? (2) If not, was Moir entitled to recover upon a *quantum meruit* the value of the services he had rendered, in view of the benefits the county had received? We will discuss these questions in order.

It must be conceded at the outset that the board of county commissioners is in a sense the general business agent of the county, and as such has charge of its financial affairs and business matters that are not expressly or by necessary implication delegated by law to other officers of the county or reserved to the people. (See Gen. Stat. 1901, § 1621. See, also, *Comm'rs of Stafford Co. v. The State, ex rel.,* 40 Kan. 21, 18 Pac. 889.) It must also be conceded that if the county has the power to make such a contract as the one in question the board of county commissioners is the only agency through which the power can be exercised. The general powers conferred upon counties and county commissioners by our statute are set forth in sections 1603 and 1621 of the General Statutes of 1901. If the power here contended for is embraced therein the contract is valid; otherwise it is not. The two sections must be construed together. The fifth clause of section 1621 is restrictive of the powers conferred upon the county board. (*Brown v. The State,* 73 Kan. 69, 84 Pac. 549.) It reads:

"Fifth, to represent the county and have the care of the county property, and the management of the business and concerns of the county, in all cases where no other provision is made by law."

The statute relating to taxation prescribes a complete and entire system of listing, valuing and taxing all real and personal property, and also prescribes a procedure for discovering and listing property for

taxation which has escaped the surveillance of the assessors, and assigns the several steps in the system and procedure to designated officers of the townships and counties of the state. It imposes upon certain officers the very duties which, by the contract in question, the county commissioners undertook to employ Moir to perform. (Gen. Stat. 1901, §§ 7585-7607.) It was beyond the power of the board of county commissioners to employ any other agency to perform these duties, and the contract is therefore *ultra vires* and void. (*Brown v. The State,* 73 Kan. 69, 84 Pac. 549; *Coal Co. v. Emlen,* 44 Kan. 117, 24 Pac. 340; *Waters v. Trovillo,* 47 Kan. 197, 27 Pac. 822. See, also, *Chase v. Board of Com'rs* [Colo. 1906], 86 Pac. 1011; *Stevens v. Henry County,* 218 Ill. 468, 75 N. E. 1024, 4 L. R. A., n. s., 339; *Grannis v. Board of County Commrs.,* 81 Minn. 55, 83 N. W. 495; *Storey v. Murphy,* 9 N. Dak. 115, 81 N. W. 23; *House v. Los Angeles County,* 104 Cal. 73, 37 Pac. 796; *Platte County v. Gerrard,* 12 Neb. 244, 11 N. W. 298.)

The contract in this case grew out of an attempt to solve a problem in civil government which has vexed the ages since the dawn of history. The calling of the publican who sat at the receipt of customs furnished Hebrew literature with the most hated name it recorded. The question how to collect the necessary revenues to maintain the government was as distracting in the economy of Greece and Rome as it is in modern nations. In the Middle Ages the question was attempted to be met by reprisals in war or by arbitrary assessments upon wealthy subjects. Later the greater governments exploited their colonies, and this was a deciding factor in instituting the rebellion of the American colonies against Great Britain. The difficulties presented led the founders of our government to the evasion of indirect taxation, without which, possibly, the union of the states might have long since been dissolved. Even this evasion has evidently not eliminated all the difficulties, as it has furnished the dominent questions in politics for two generations. Under

all governments and in all times one of the greatest strifes has arisen from attempts to shift the burden of taxation upon other shoulders. Men have sent their sons into battle or recklessly given their own lives to preserve their governments, for the maintenance of which they had denied the payment of a small portion of their accumulated wealth.

Our state has had equitable tax laws from its first organization, which, if obeyed, would have fairly equalized the necessary burdens, but, as administered, they have resulted in great injustice and dissatisfaction. Even the beneficent exemption from taxation of $200 worth of property to the family has been abused. Assessing officers, sworn to perform their duties impartially, have felt compelled to depart from the plain provisions of the law to avoid injustice to their respective townships. Men generally honorable and accounted good citizens have, in listing their property, done so in accordance with the general custom, and not at its true value. Indeed so general has been the evasion of the law that the citizen has been compelled to choose between following the custom and suffering a wrong. Taxing officers have held conventions to agree upon a basis of assessment other than that provided by law. On the other hand, the tax-ferret, coming upon the scene with a contract for fat commissions, acquaints himself with the evasions that have occurred in past years, and by threats of public exposure and even criminal prosecution — in short, by all the methods known to the blackmailer — forces from the citizen a statement of property to be taxed and even a payment of money for past delinquencies far beyond the requirements of the law. The situation has been such that it is not a wonder that boards of county commissioners should embrace almost any plan that promised a reasonably fair collection of necessary public revenues in proportion to the amount of property really owned by the citizens of their respective counties. Probably no board of county commissioners

which ever made a contract such as is involved in this suit anticipated the methods that would be employed under it. They probably had not studied the iniquities which have at all times grown up under every system that has been in vogue of farming out the collection of the public revenues. The experiences of the past, however, have been such that it is impossible to contemplate any civilized community, with a knowledge of its history, reviving the odious practice. The contract is not only void for want of authority but as being against public policy.

The question whether the defendant is entitled to recover on a *quantum meruit* resolves itself into the question whether a contract which the county commissioners had no power to make should be implied. Such a contract will not be implied, especially in payment for services which were, as in this case, illegal in themselves. There are cases in which counties and municipalities are, upon the avoiding of a contract, held under obligations to put the opposite party in *statu quo,* or, if this cannot be done, to pay a reasonable price for the benefits actually received; but those cases are easily distinguishable from this. Here the services performed were illegal and against public policy, as was the contract, and Moir will be presumed to have made the contract and to have begun performance with full knowledge thereof. The law will afford him no relief.

There is no dispute as to the contract upon which this suit is based or as to the services rendered thereunder. Hence the conclusion at which we have arrived terminates the suit. The judgment of the court is reversed and the case is remanded, with instructions to grant a permanent injunction in favor of the plaintiff as prayed for.