## PIERSON et al. v. MINNEHAHA COUNTY.

Dismissal of an appeal from an order overruling a demurrer to the complaint, on the ground that defendant had waived its right of appeal by filing an answer, was not such a final adjudication as to the sufficiency of the complaint as to preclude determination of the question on a subsequent appeal.

A board of county commissioners has no inherent power to contract with tax ferrets to share penalties recovered on assessment of property not listed for taxation, and Pol. Code, §§ 2074, 2075, providing for the listing by certain officers of omitted property with a right to receive half of the penalties recovered, does not authorize such contract.

Pol. Code, §§ 2074, 2075, providing for the assessment of property not listed by the owner and for compensation to certain officers for procuring such assessment, are limited to assessments for the current year.

In the absence of express authority, county commissioners cannot place upon the assessment roll any property omitted from taxation in former years.

Under Pol. Code, § 2075, providing that certain officers who caused to be listed property omitted from assessment shall receive 50 per cent. of the penalty prescribed by section 2074, "to be paid at such times as such tax is collected," right to recover such share must rest on a showing of collection of the penalty.

Laws 1905, c. 40, "An act to define the powers and duties of the county and state boards of assessment in the assessment of properties, and prescribing remedies therefor," violates Const. art. 3, § 21, which provides that no law shall embrace more than one subject which shall be expressed in the title, in that the title does not express the subject covered by the act, there being no such bodies known to the law as county or state boards of assessment, and in that the act comprises several subjects not expressed in the title.

The object of Const. art. 3, § 21, which provides that no law shall embrace more than one subject which shall be expressed in its title, is to give such information to the legislators as will enable them to determine the nature and character of the act under consideration.

An "account" which may be referred under Code Civ. Proc. § 282, is an account in the ordinary acceptation of that term—that is, charges and credits between parties—and hence an action against a county for breach of a contract to share penalties recovered for listing property omitted from taxation is not referable.

(Opinion filed, January 17, 1912.)

Appeal from Circuit Court, Minnehaha County. Hon. FRANK B. SMITH, Judge.

Action by E. E. Pierson and another against Minnehaha County. From an order appointing a referee, defendant appeals. Reversed.

See, also, 26 S. D. 462, 128 N. W. 616.

*Martin Bergh*, State's Atty. (*G. J. Danforth* and *Bailey & Voorhees*, of counsel), for appellant. *Sam H. Wright*, for re-respondent.

CORSON, J. This is an appeal by the defendant from an order of the circuit court of Minnehaha county made the 1st day of June, 1911, in which it is ordered and adjudged "that Arthur R. Brown be and is hereby appointed referee to try all of the issues in said action both of fact and of law and to report a finding and judgment thereon to the court." The assignments of error are as follows: "The defendant assigns as error the ruling of the court in making the order overruling the defendant's demurrer, and the ruling of the court in making the compulsory order of reference." It will be necessary for the determination of the correctness of the order of the circuit court to briefly state the nature of the action and the proceedings therein. It is alleged in the complaint, in substance, that the plaintiffs did on or about the 13th day of May, 1909, apply to the said county, through its board of commissioners, to undertake to investigate the omission by various and sundry taxpayers of said county to list their personal property under the provisions of sections 2074 and 2075 of the Political Code of this state, and said board did pass and have entered upon the records of said board a resolution authorizing the plaintiffs to make such investigation and report to the said board, and as compensation therefor should receive one-half of the penalty recovered on such omitted taxes; that these plaintiffs,

pursuant to, and in consequence of said employment, and during said month of May, 1909, did commence the work involved in and covered by their said employment; that on the 17th day of July, 1909, and while these plaintiffs were engaged in their efforts to fully investigate and report to the said board, and had in fact filed with the county auditor of said county their report showing the nonrendition by the several taxpayers for the years beginning with 1900 and ending with 1909 of their taxable mortgages, a copy of which is attached and marked "Exhibit A," which showed the several nonpaying taxpayers, the several amounts which they were respectively chargeable with on account of the nonpayment of taxes, with several statements therin set forth, and the names of the persons who were chargeable thereunder, which is made a part of the complaint; that, without any reason therefor, the said board of county commissioners did on the 17th day of July, 1909, pass and have spread upon the records of said board a resolution, rescission, and revocation of the said contract; that, when the said defendant revoked the said contract and discharged these plaintiffs, they were engaged in ascertaining the other personal taxable property, which the several persons chargeable therewith, in addition to the real estate mortgages mentioned in Exhibit A, had omitted for several years, beginning with the year 1900 and ending with 1909, and that, in consequence of their discharge and dismissal from their said investigation as thereinbefore set forth in the said resolution dated the 17th day of July, these plaintiffs did not further pursue their said line of investigation, their right to do so having been terminated as before stated; that the total amount of the real estate mortgages discovered by these plaintiffs which had been omitted from the tax lists, legally assessable against such owners of said mortgages, the years of such omissions, and other data relative thereto, are set out in Exhibit A, made a part of the complaint, specifying the amounts for the various years. It is then alleged that there was not less than $500,000 per year during all the years mentioned of nonlisted taxable personal property other than real estate mortgages, as shown in Exhibit A, omitted from the said taxes; that the plaintiffs performed their work and duties under said contract; that by reason

thereof they have earned $125,000, the same being based and predicated upon the tax levies for each of said several years; that a much greater amount could have been collected from the said fraudulently omitted mortgages that would have been coming to plaintiffs and receivable by them under said contract had the said county, through its board of commissioners, done its duty; that in consequence thereof these plaintiffs have sustained damage in that amount, no part of which has been paid, although a due demand therefor has been made; that plaintiffs have at all times been able, ready, and willing to carry out and perform their part of said contract, but that said board of commissioners has failed and refused to permit plaintiffs so to do, and thereby violated the contract; that the plaintiffs duly presented their account to said board of commissioners, but that said board had neglected to act upon said claim. Wherefore the plaintiffs demand judgment against the said defendant for the said sum of $125,000, together with costs and disbursements. Annexed to the complaint is Exhibit A, containing 316 pages, of which a copy of the first page is given in the abstract, and it appears in the affidavit hereinafter referred to that Exhibit A contains 15,000 items.

[1] To this complaint a demurrer was interposed by the defendant on the ground that the complaint does not state facts sufficient to constitute a cause of action, which was overruled by the circuit court, from which order overruling the same the defendant appealed to this court and also filed an answer to the complaint. The appeal from the order overruling the demurrer was dismissed by this court on the ground that the defendant by filing an answer had waived its right of appeal, 26 S. D. 462, 128 N. W. 616. The defendant thereupon filed an amended answer not necessary to be set out in this opinion.

It is contended by the appellant that the demurrer should have been sustained by the trial court, and that therefore an order of reference was unauthorized and void. Appellant further contended that, assuming that a good cause of action was stated in the complaint, the items of alleged damage stated therin did not constitute such an account as the court is authorized to refer

against the objection of the defendant under section 282 of the Code of Civil Procedure of this state.

Counsel for the respondent, as to the first proposition, insisted that the order of the trial court overruling the demurrer to the complaint, from which no valid appeal was taken within 60 days after the entry of the order overruling the demurrer, is a final adjudication as to the sufficiency of the complaint, and that its decision cannot now be questioned or controverted in this case for the reason that an appeal from the order overruling the demurrer was taken to this court and the appeal dismissed, on motion of respondents' counsel, on the ground that subsequent to taking the appeal an answer was filed in the action.

We are of the opinion that the contention of the plaintiffs is untenable, as the order overruling the demurrer was subject to review by this court upon an appeal from the judgment or from any other order in which the insufficiency of the complaint to state a cause of action might be properly challenged. The effect of the decision of this court dismissing the appeal from the order overruling the demurrer (26 S. D. 462, 128 N. W. 616), on the ground that an answer had been filed, was that an appeal from the order overruling the demurrer could not be taken to this court after an answer had been filed in the action. But this court did not decide, nor intend to decide, that the decision of the trial court overruling the demurrer was such a final determination as to the sufficiency of the complaint as to preclude this court, upon a proper appeal and a proper assignment of error, from reviewing such order.

In 6 Encyclopedia of Pleading & Practice, 363, the law upon the subject of demurrer is thus stated: "Where a demurrer to a pleading is overruled, and the demurrant thereupon pleads over, the demurrer is waived by pleading over, except in jurisdictions where statutes provide to the contrary. So, also, it is a general rule that any errors committed in overruling a demurrer are waived. But there are some well-recognized exceptions to the rule, one of which is error in overruling a demurrer to a complaint which does not state a cause of action, and the other, error in

overruling a demurrer for want of jurisdiction of the action"—citing a number of cases, among which are the following: Chapline v. Robertson, 44 Ark. 202; Fordyce v. Merrill, 49 Ark. 277, 5 S. W. 329; Thalheimer v. Crow, 13 Colo. 397, 22 Pac. 779; Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420.

In Teal v. Walker, supra, the learned Supreme Court of the United States, speaking by Mr. Justice Woods, says: "The writ of error is not taken to reverse the judgment of the court upon the demurrer to the complaint, for that was not a final judgment, but to reverse the judgment rendered upon the verdict of the jury. The error, if it be an error, of overruling the demurrer, could have been reviewed on motion in arrest of judgment, and is open to review upon this writ of error. When the declaration fails to state a cause of action, and clearly shows that upon the case as stated the plaintiff cannot recover, and the demurrer of the defendant thereto is overruled, he may answer upon leave and go to trial, without losing the right to have the judgment upon the verdict reviewed for the error in overruling the demurrer. The error is not waived by answer, nor is it cured by verdict. The question, therefore, whether the complaint in this case states facts sufficient to constitute a cause of action, is open for consideration."

And such seems to be the view that should be taken of section 125, which concludes the article on demurrer in our Code of Civil Procedure, which provides: "If no such objection be taken either by demurrer or answer the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action."

In Goldberg et al. v. Sisseton Loan & Title Co. et al., 24 S. D. 49, 123 N. W. 266, this court held that the objection that the complaint does not state facts sufficient to constitute a cause of action may be made for the first time on appeal in this court, provided there is an assignment of error sufficient to bring it to the attention of the court. If this were an appeal from the final judgment, we should have no hesitancy in holding that the de-

fendant was entitled to a review of the order of the trial court overruling the defendant's demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action; but as this appeal is from an order, and not from a final judgment, an important question is presented as to our right to review the order of the trial court in overruling the demurrer on this appeal. This appeal, as before stated, is from the order referring the case to a referee to report the facts and judgment in the case. It appears from the recital of the trial court in its order granting the plaintiff's motion that the same was made upon the affidavit, complaint, demurrer, answer, etc. It would seem that, if the complaint does not state facts sufficient to constitute a cause of action, the trial court was clearly in error in making the order appealed from. Thus, while this appeal is not from a final judgment, it is nevertheless an appeal from an important order, and hence it will be proper for this court to determine whether or not the trial court was right in overruling the demurrer in order to properly determine the correctness of the order of the court referring the case to a referee. We are of the opinion, therefore, that, in view of the importance of the order as affecting the substantial rights of the defendant and in compliance with the express desire of all parties, it is proper for us on this appeal to review the order of the circuit court overruling the demurrer of the plaintiff. To require the defendant to contest the 15,000 claims, which the plaintiff asserts it is necessary to consider in order to determine the amount of damages sustained by the plaintiff, would be a great and unnecessary burden in case this court should finally hold that the complaint did not state facts sufficient to constitute a cause of action. In view of the law as held by this and other courts, we will now proceed to review the order of the trial court overruling the demurrer.

The appellant thus summarizes its contentions that the court below erred in overruling the defendant's demurrer to the complaint: "(1) The contract entered into between Minnehaha county and the respondents was void for the reason that the compensation of 50 per cent. of the additional penalty provided for by section

2075, P. C., can only be paid to the assessor, auditor, board of review, board of equalization, or other officer causing the omitted property to be listed for taxation, and cannot be paid to any person not one of the taxing officers specified in the section. (2) Sections 2074 and 2075 are not retroactive, and can be held to refer only to assessments for the current fiscal year. (3) That the provisions of said sections are so vague, uncertain, and unreasonable in their provisions as to be void and of no effect. (4) That said sections 2074 and 2075 were repealed by chapter 40 of the Laws of 1905. (5) Chapter 40, Laws of 1905, is unconstitutional and is in conflict with section 21 of article 3 of the state Constitution, in that it embraces more than one subject and neither of its subjects are expressed in its title. The title of the act purports to define the duties and powers of boards which have no legal existence. (6) Boards of county commissioners in South Dakota do not possess any 'inherent authority' to employ tax ferrets, and, in the absence of any statutory provision for such employment, the contract under consideration is ultra vires, against public policy, and void. (7) Under the uniform holding of the courts, respondents are not entitled to recover even under quantum meruit. (8) The court had no right to make an order of compulsory reference, because this is not a case involving the examination of a long account within the terms of such statute, as defined by the decisions of the court. (9) Subdivision 1 of section 282 of the Code of Civil Procedure is in violation of the Constitution of the United States and of the state of South Dakota."

[2] Sections 2074 and 2075 of our Political Code read as follows:

"Sec. 2074. Any person, firm or corporation who shall evade, deceive or by any manner of means not list all the property, real or personal, of any and all descriptions, in addition to any and all other penalties be subject to a penalty of having added to his assessment as previously listed the amount not listed and an additional amount as a penalty of fifty per cent.

"Sec. 2075. Any assessor or deputy, county auditor, board of review or state board of equalization, who shall upon investigation

ascertain by means of investigation that any party has not so listed all or any part of his property, real or personal, shall cause the same to be listed as required in the preceding section, and the assessor or deputy or other authorized officer causing such omission and penalty to be so listed shall receive for compensation fifty per cent. of the additional penalty to be paid at such times as such tax is collected on such assessment."

Section 2075, as will be observed, provides that "any assessor or deputy, county auditor, board of review or state board of equalization," who shall cause to be listed property which may have escaped taxation, "shall receive for compensation fifty per cent. of the additional penalty *to be paid at such times as such tax is collected on such assessment."* It will be noticed that this section gives the board of county commissioners no authority whatever to enter into a contract with any person, and that the only persons authorized to receive such compensation are the assessor or deputy, or other authorized officers causing such omitted property to be listed. The statute offers the reward to the regular officers personally, and there is no provision in the statute authorizing persons other than these officials to investigate property which has been omitted from taxation. It will also be observed that the section does not empower the board of county commissioners either itself to list any property which has escaped taxation, or to employ any person to list the same. The board of county commissioners does not come within the description of officers or boards designated in that section. The only contract alleged in the complaint is one made by the board of county commissioners, and no statute has been called to our attention conferring authority upon the board of county commissioners, acting as such, to enter into any such contract, and, in the absence of an express statute, boards of county commissioners have no such authority to enter into such a contract. State v. Board of Com'rs, 77 Kan. 540, 95 Pac. 392. It appears in the statement of facts in that case that one Moir presented to the county commissioners of Dickenson county a proposition similar to the one in the case at bar; that upon considering the same the board formally accepted

the proposition; that Moir thereafter entered upon the execution of the contract; that the proper county officers, through his assistance, collected about $4,000 additional taxes; that the board of county commissioners allowed Moir his bill for services under this contract; that an action was instituted to enjoin the board from executing the contract; and that a judgment was entered in the circuit court in favor of the defendants.

The court in considering the case says: "Numerous errors are assigned; * * * but two questions of law will determine the case, viz.: (1) Was the contract a valid contract? (2) If not, was Moir entitled to recover upon a quantum meruit the value of the services he had rendered in view of the benefits the county had received? * . * * The statute had prescribed a complete and entire system of listing, valuation, and taxing of all real and personal property. * * * It was beyond the power of the board of county commissioners to employ any other agency to perform these duties which had been imposed upon county officers, and the contract is therefore ultra vires and void." And the court cites a large number of authorities in support of the position of the court. The court concludes: "The question whether the defendant in error is entitled to recover in quantum meruit is if a contract which the county commissioners had no power to make should be implied. Such a contract will not be implied, especially in payment for services which were, as in this case, illegal in themselves. * * * Here the services performed were illegal and against public policy as was the contract, and Moir will be presumed to have made the contract and to have begun performance with full knowledge thereof. The law will afford him no relief." And the judgment of the circuit court was reversed.

The contention of the plaintiffs that the board of county commissioners have inherent power to enter into the contract with the plaintiffs is clearly untenable and against the weight of authority. Stevens v. Henry County, 218 Ill. 468, 75 N. E. 1024, 4 L. R. A. (N. S.) 339; Grannis v. Board of Commissioners of Blue Earth County, 81 Minn. 55, 83 N. W. 495; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23; Chase v. Boulder County, 37 Colo. 268, 86

Pac. 1011; Campbell v. Workman, 124 Ill. App. 404; Brown v. State, 73 Kan. 69, 84 Pac. 549; State v. Board of Com'rs, 77 Kan. 540, 95 Pac. 392; Platt County v. Gerrard, 12 Neb. 244, 11 N. W. 298; House v. Los Angeles County, 104 Cal. 73, 37 Pac. 796; Flannagan v. Buxton, 145 Wis. 81, 129 N. W. 642, 32 L. R. A. (N. S.) 391; Frederick v. Douglass County, 96 Wis. 411, 71 N. W. 798; State ex rel. v .Goldthait, 172 Ind. 210, 87 N. E. 133; Workman v. Bent, 45 Ind. App. 75, 90 N. E. 85.

In Stevens v. Henry County, supra, the learned Supreme Court of Illinois, as appears from the headnote, held: "The board of supervisors in a county under township organization has no power, in the absence of specific grant, to enter into a contract with a person to search for and unearth property omitted from taxation in former years."

In Grannis v. Board of Commissioners, etc., supra, the learned Supreme Court of Minnesota held, as appears from the headnote, that: "Defendant board of county commissioners entered into a contract with one Welman, whereby and by the terms of which Welman undertook and agreed to perform certain services in behalf of the county of Blue Earth, in discovering and bringing to light unassessed and untaxed personal property in such county which had not been taxed for the year 1899 and prior years, in consideration for which services the board of county commissioners, by resolution, agreed to pay said Welman a compensation equal to one-half of all taxes paid into the county treasury as the result of his labors. Held, that such contract is ultra vires and void."

[3] Again, the sections referred to are not retroactive, and, when read in connection with the sections preceding and following them, cannot be held to refer to any assessments prior to that of the current year. It does not appear upon examination of the Political Code that any authority is given to place upon the tax list any property for other than the current year. The only authority to add omitted property is found in section 2106, which reads as follows: "The county auditor shall carefully examine the assessment books when returned to him by the assessors, and if

he discovers that the assessment of any property has been omitted he shall enter the same upon the proper list and forthwith notify the assessor making such omission, who shall immediately proceed to ascertain the value of such property and make the necessary corrections."

[4] It seems to be well settled that, in the absence of express authority, a board of county commissioners has no authority to place upon the assessment roll any property omitted in former years. St. Louis, etc., R. R. Co. v. Miller County, 67 Ark. 498, 55 S. W. 926; Hayward v. People, 156 Ill. 84, 40 N. E. 287; Stockman v. Robbins, 80 Ind. 195; Thornburg v. Cardell, 123 Iowa, 315, 95 N. W. 239, 98 N. W. 791; Baltimore, etc., R. R. v. Wicomico Co., 93 Md. 113, 48 Atl. 853; State Revenue Agent v. Tonella, 70 Miss. 701, 14 South. 17, 22 L. R. A. 346; Johnson v. Royster, 88 N. C. 194; Oregon Steam Navigation Co. v. Portland, 2 Or. 81; State v. Cheraw, etc., R. R. Co., 54 S. C. 564, 32 S. E. 691; Sullivan v. Peckham, 16 R. I. 525, 17 Atl. 997; Whiting v. West Point, 89 Va. 741, 17 S. E. 1.

In B. C. & A. Ry. Co. v. Wicomico County, supra, the learned Supreme Court of Maryland held, as appears by the headnote, that: "In the year 1899, the county commissioners, appellees, assessed for taxation certain property of the defendant which, although liable, had previously escaped taxation, and levied taxes thereon not only for the year 1899, but also for the years 1896, 1897, and 1898. In an action to recover these taxes, held, that the power of the commissioners to levy taxes in any one year is restricted to the levy for that year, and, when such levy is made, the power as to that year is exhausted, and that the levy of taxes made in 1899 against the defendant for the years 1896, 1897, and 1898 was not made in pursuance of the power conferred, and therefore created no obligation upon the defendant to pay said taxes."

[5] The complaint fails to state facts sufficient to constitute a cause of action, also, in that no proper measure of damages is alleged. It is the contention of the plaintiffs that their damages

are to be ascertained by an examination of the mortgages, a list of which they filed, and the amount of penalty incurred by the failure of the parties named as mortgagees therein to list the same; but it will be observed that section 2075 provides that the officers so discovering unlisted property shall receive as compensation 50 per cent. of the additional penalty *"to be paid at such times as such tax is collected on such assessment."* It is not alleged in the complaint that any sum for unlisted property had been collected, and it is purely conjectural and speculative as to whether such penalty could have been or can be collected from the owners of such property. It is difficult, therefore, to see upon what basis the court could proceed in determining the amount of damages the plaintiffs sustained by reason of the alleged breach of contract.

In Chase v. Board of County Commissioners of Boulder County, 37 Colo. 268, 86 Pac. 1011, the Supreme Court of Colorado had a similar contract under consideration, and in their opinion the court says: "No proper measure of plaintiffs' damages exists. What they would be entitled to is purely speculative and conjectural. The uncertainty, nay, the impossibility, of ascertaining in this action either the valuation of the omitted property, or the amount of tax that would be collected, renders the contract absolutely incapable of performance. The judgment of the district court which resulted in a dismissal of the action was right, and is affirmed."

[6] It is contended by the plaintiff that, though apparently the complaint is based upon the sections 2074 and 2075, part of the complaint referring to those sections may be treated as surplusage, and the order overruling the demurrer sustained under the provisions of chapter 40 of the Laws of 1905.

It is contended by the defendant that that chapter is unconstitutional, being in conflict with section 21 of article 3 of the state Constitution, in that it embraces more than one subject, and neither of these subjects is expressed in its title. We are of the opinion that the contention of the defendant is right.

The title of the act is as follows: "An act to define the duties and powers of the county and state boards of assessment in the

assessment of properties, and prescribing remedies therefor." No such bodies as a "county board of assessment" and a "state board of assessment" are known to the laws of South Dakota. There is a county board of equalization provided for by section 2107, P. C., composed of the county commissioners, or a majority of them, with the county auditor; but this is not a board of assessment and is not so designated in the Political Code. Chapter 40 does not attempt to create a "county board of assessment," but only attempts to authorize the board of county commissioners to place upon the assessment rolls or tax lists all personal property which may have been omitted or concealed from assessment.

There is also a state board of equalization, consisting of the Governor, Auditor, Secretary of State, Treasurer, and Commissioner of School and Public Lands. The state board of equalization is also empowered to act as a board of assessment for the assessment of railroads, telegraph, telephone, express, and sleeping car companies. This power of assessment is a special power limited to the corporations mentioned. Its proper title, as defined by section 2109, P. C., is the "state board of equalization." It is nowhere designated as the "state board of assessment," and there exists no such board in the state.

The title does not comply with the provisions of our Constitution, in that it does not express the subject covered by the act, and the act comprises several subjects not expressed in the title. On reading the provisions of the act, it will be noticed that it provides for a special rule of evidence applicable to the class of cases provided for in the chapter, but which are not referred to in the title. And it will be observed further that in the title it is provided "and providing remedies therefor." What is meant by the words "and providing remedies therefor" it is difficult to determine. It seems to us too clear for argument that a member of the Legislature listening to the reading of the title would obtain but a very slight knowledge, if any, of the contents of the chapter.

[7] The object of the constitutional provision, which provides, "No law shall embrace more than one subject, which shall be expressed in its title," was clearly to provide that the title of

the act should give such information to the legislators as to enable them to determine the nature and character of the act under consideration. The object and reason of this constitutional provision has been so fully considered by this court in its former opinions that it will not be necessary to repeat them in this opinion. State v. Morgan, 2 S. D. 32, 48 N. W. 314; State v. Becker, 3 S. D. 29, 51 N. W. 1018. The title of the act not complying with the constitutional provision, the whole act constituting chapter 40 of the Laws of 1905 must, for the reasons stated, be held unconstitutional and void, as this court is not authorized to correct the defects in the title.

These views lead to the conclusion that the facts stated in the complaint in this action are not sufficient to constitute a cause of action, and that the order of the court overruling the demurrer was clearly erroneous, and that the demurrer to the complaint should have been sustained.

[8] But assuming that the facts stated in the complaint were sufficient to constitute a cause of action, the order appealed from was clearly erroneous for the reason that the cause of action stated in the complaint is not of a nature to constitute an "account" which may be referred under the provisions of section 282 of our Code of Civil Procedure. In volume 17, p. 993, Enc. of Pl. & Prac., the law applicable to referring cases is thus stated: "An action to recover unliquidated damages for the violation of a contract is not referable, although there are different items of alleged damage." On page 997 of the same book it further states: "The account contemplated by the statute is an account in the ordinary legal acceptation of the term; that is, charges and credits between parties." Johnson v. Atlantic, etc., R. R. Co., 139 N. Y. 449, 34 N. E. 925.

In the case of Betcher v. Grant County, 9 S. D. 82, 68 N. W. 163, this court held: "By 'account,' as used in this section, is meant an account in the ordinary acceptation of that term; that is, charges and credits between parties." And the same view as taken in this case was affirmed in Kelley v. Oksall, 17 S. D. 185, 95 N. W. 913, and Ewart v. Kass, 17 S. D. 220, 95 N. W. 915. See, also, McMaster v. Booth, 4 How. Prac. (N. Y.) 427.

In the last case cited the learned Supreme Court of New York in discussing the subject says: "As I understand the meaning of that term, I should define an account to be a computation or statement of debts and credits arising out of personal property bought or sold, services rendered, material furnished, and the use of property hired and returned. If an account does not fall within this definition, it is not an account within the ordinary legal acceptation of the term and cannot be referred without the consent of the parties."

The order of the court in ordering a reference over the objection of the defendant was clearly erroneous, and its order is therefore reversed.