[No. 19404. Department One.—September 13, 1894.]

# R. F. HOUSE, Respondent, *v.* LOS ANGELES COUNTY, Appellant.

Counties—Collection of Delinquent Taxes—Sales to State—Percentage—Power of Supervisors.—The board of supervisors in a county have no power or authority to enter into a contract with a private individual to proceed and cause to be collected from owners what may be due on account of sales of real estate made to the state for delinquent taxes, and to pay him a percentage upon such collection.

Id.—Collection of Taxes by Officers—Prescribed Mode the Measure of Power of Supervisors.—The whole course of proceeding from the levy of a tax to its collection is confided to officers designated by the statute, whose duties and the time and manner of their discharge are specified by the law; and the power to levy and collect taxes conferred upon the supervisors does not imply a power to collect them in any other manner, but the mode of the exercise of the power conferred being prescribed, the mode prescribed is the measure of the power.

Id.—Redemption of Land Purchased by State—Option of Owner.—The owner may redeem land purchased by the state or not at his option at any time before the state has disposed of it, and the board of supervisors have no control in the matter and cannot intervene to accelerate or retard a redemption.

Id.—Appointment of Agent by Supervisors—Ministerial Duties—Public Trust.—The board of supervisors, in the absence of positive law authorizing it to do so, cannot in any case appoint an agent to exercise powers which it cannot itself exercise; though in the exercise of powers conferred upon it it may appoint agents to discharge ministerial duties not calling for the exercise of reason or discretion, but cannot go beyond this and delegate to others duties, the discharge of which, calling for the use of reason and discretion, are regarded as public trusts.

Appeal from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*District Attorney H. C. Dillon,* and *Deputy District Attorney A. J. Utley,* for Appellant.

The statute under which the appointment of plaintiff was made cannot be construed to authorize such an appointment. (See Pol. Code, secs. 3877–80.)

*James McLachlan*, for Respondent.

The board of supervisors had power, under their general grant of power, to enter into the contract with the plaintiff. (*Hawk* v. *Marion County*, 48 Iowa, 474; *Wilhelm* v. *Cedar County*, 50 Iowa, 254; *People* v. *Haws*, 12 Abb. Pr. 208; 21 How. Pr. 182; *Brady* v. *Supervisors*, 2 Sand. 460; Statutes of 1889, p. 359; *People* v. *El Dorado County*, 8 Cal. 58; *Hornblower* v. *Daden*, 35 Cal. 664; *Lassen County* v. *Shinn*, 88 Cal. 510; *Jones* v. *Morgan*, 67 Cal. 308; *Hoffman* v. *Commrs. of Lake County*, 96 Ind. 84; *Newman* v. *Supervisors*, 45 N. Y. 676; *Collins* v. *Welch*, 58 Iowa, 72; 43 Am. Rep. 111; *Hopkins* v. *Clayton Co.*, 32 Iowa, 15; *Mitchell* v. *Commissioners*, 18 Kan. 188; *Smith* v. *Commissioners*, 21 Kan. 669; *Doster* v. *Howe*, 28 Kan. 353; *Thacher* v. *Commissioners*, 13 Kan. 182; *Ellis* v. *Washoe County*, 7 Nev. 291; *McCabe* v. *Commissioners*, 46 Ind. 380; *Board of Commrs.* v. *Ross*, 46 Ind. 404; *Taylor* v. *Umatilla County*, 6 Or. 394; *Chester County* v. *Barber*, 97 Pa. St. 455; *Commissioners* v. *Nesbit*, 6 Md. 468; *State* v. *Hudson County*, 44 N. J. L. 388; *Gillet* v. *Board of Supervisors*, 67 Ill. 256.)

The Court.—This action was brought by R. F. House, the respondent here, to recover four hundred and sixty dollars and fifty-six cents, for services rendered to the county of Los Angeles in the collection of money on account of delinquent taxes, in cases where real property had been sold to the state of California and no redemption had.

The plaintiff in his complaint sets out a contract in writing, entered into on the fifteenth day of December, 1891, between him and the controller and attorney general of the state of California, in which the latter appointed the former to collect and cause to be collected or cause to be redeemed, or to cause the payment of all moneys necessary to redeem all property sold to the state for taxes from 1870 down to and including the forty-second fiscal year; and to take all necessary steps

to cause said property to be redeemed; to serve all notices, etc.

In consideration of which said House was to receive: 1. All fees allowed by law for notices served; 2. Such sum as the state board of examiners may allow on all moneys collected and paid to the county for the state, not exceeding fifteen per cent of the amount collected, etc.

The appointment was for the territory embraced in what now composes the counties of Los Angeles and Orange.

The complaint further avers that on or about December 29, 1891, the board of supervisors of the county of Los Angeles passed a resolution of which the following is a copy:

"*Whereas*, the state of California, through and by E. P. Colgan, state controller, and W. H. H. Hart, attorney general, has entered into a contract with R. F. House to proceed and cause to be collected from owners what may be due on account of sales of real estate heretofore made to the state for delinquent taxes, agreeing with him to pay him such percentage on such collections as the state board of examiners may allow, not to exceed fifteen per cent (15%) on the amount of such collection; it is therefore

"*Resolved*, That the county of Los Angeles shall pay to said House such percentage on the amount of all redemptions as the state board of examiners may allow, not to exceed fifteen per cent on such sum; *provided*, that such payment and allowance can be legally made; the said House to prepare and provide all necessary and proper books for the transaction of the above matter, which said books shall be at all times open to the examination of the county auditor of this county, its board of supervisors, and such persons as it may be designated; the said books, on the expiration of said contract, to be by said House deposited with the county auditor, and become the property of the county; all of the matters and things above provided for to be done and performed without expense of any kind to this county, said com-

mission, however, not paying the costs of any suit ordered brought."

The plaintiff entered upon the discharge of the duties specified in his agreement with the state and the resolution of the board of supervisors, and between December 1, 1892, and April 30, 1893, by virtue of his appointment and employment, caused to be collected and paid into the county treasury for the use and benefit of Los Angeles county the sum of three thousand and seventy dollars and twenty-eight cents, to fifteen per cent of which he claims to be entitled, amounting to four hundred and sixty dollars and fifty-six cents, as compensation for his services.

He further avers that the state board of examiners allowed him fifteen per cent on the state's portion of the taxes so collected during said period, which has been paid; that his claim for four hundred and sixty dollars and fifty-six cents, duly verified, was presented for allowance to the board of supervisors of the county of Los Angeles on July 22, 1893, which claim was disallowed by the board, whereupon and in due time this action was brought.

Defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action.

The demurrer was overruled, and defendant refusing to answer, final judgment was entered in favor of plaintiff for four hundred and sixty dollars and fifty-six cents and costs, from which judgment the defendant appeals.

We have searched in vain among the general permanent powers, conferred by the County Government Act upon boards of supervisors, and for other and special authority, either express or implied, under which the board of supervisors of the county of Los Angeles was authorized to enter into the contract with the respondent involved in the resolution set out in the complaint.

Counties are bodies corporate and politic, and have such powers as are specified in and such other powers as are necessarily implied from the powers conferred by

the act of March 31, 1891, entitled "An act to establish a uniform system of county and township governments." "Its powers can only be exercised by the board of supervisors, or by agents and officers acting under their authority, or authority of law." (Stats. 1891, sec. 2, p. 295.)

By the fourth section of the act it is entitled to: "1. Sue and be sued; 2. To purchase and hold land within its limits; 3. To make such contracts and hold such personal property as may be necessary to the exercise of its powers; 4. To manage and dispose of its property as the interests of its inhabitants may require; 5. To levy and collect such taxes, for purposes under its exclusive jurisdiction, as are authorized by law."

Among the general permanent powers conferred upon the board of supervisors by the twenty-fifth section of the act are "under such limitations and restrictions as are prescribed by law."

"1. To supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county charged with the assessing, collecting, safe-keeping, management, or disbursement of the public revenue; see that they faithfully perform their duties, direct prosecution for delinquencies," etc.

"13. To levy taxes upon the taxable property of their respective counties for all county purposes," etc.

"17. To direct and control the prosecution and defense of all suits to which the county is a party, and to employ counsel to assist the district attorney in conducting the same."

We must bear in mind that all the powers conferred upon the boards of supervisors, whether express or implied, are to be exercised "under such limitations and restrictions as are prescribed by law."

Under the power conferred to levy taxes for county purposes, it might be in the absence of other legislation plausibly contended that the power to collect the taxes so levied, without which the levy would be of no avail, would be implied as a necessary corollary of the express

power conferred.   Where, however, a power is conferred by statute, and the mode of its exercise is also prescribed, the mode prescribed is usually held to be the measure of the power.

The whole course of proceeding, from the levy of the tax to its collection, is confided to certain officers designated by the statute, whose duties, and the time and manner of their discharge, are specified by the law.

The board of supervisors, by virtue of the power conferred upon it, may supervise the official conduct of the officers designated to assess for purposes of taxation, and to collect and disburse the taxes, to the extent of requiring them to faithfully discharge their duties under the law, and direct their prosecution for failure so to do, but the board cannot add to those duties or relieve the officers from their discharge as provided by statute.

When taxes become delinquent and real property is sold and purchased by the state for nonpayment thereof, it rests with the latter to determine at its option whether or not it will apply for a deed thereof.   Like any other purchaser it may desire a redemption to be had, or it may prefer to become the owner of the property with a view to a more advantageous disposition.

The owner may redeem land so purchased by the state or not at his option at any time before the latter has disposed of it.   The board of supervisors has no voice in the matter, and cannot intervene to accelerate or retard a redemption.

If a redemption is made by the owner it can only be by applying to the auditor for an estimate and certificates of the amount due, and by presenting such certificates with the money specified therein to the county treasurer, and procuring from the latter receipts showing the payment of such amount, which he must file, etc.   Every step in the process is defined, and the officer or person by whom it is to be taken is designated.   Nothing is left to the supervisors to do or to cause to be done, except to see to it that the officers do their duty as it is nominated in the statute.

Having no authority to act in the premises, and there
being no right given by law to authorize them to appoint
an agent who was or could be authorized to act, the
attempted appointment by the resolution set out in
the complaint was *ultra vires* in the extreme sense of
the term.

What could the respondent possibly do under such
an appointment? Simply nothing. He could not col-
lect redemption money or receipt for it. He could not,
as the agent of the county, give notice to the owners of
applications on the part of the state to procure deeds to
lands purchased by it. This right or duty belonged to
the state, and could only be exercised by it.

We are of opinion that the board of supervisors, in
the absence of positive law authorizing it so to do, can-
not in any case appoint an agent to exercise powers
which it cannot itself exercise. In the exercise of
powers conferred upon it, it may appoint agents to dis-
charge ministerial duties not calling for the exercise of
reason or discretion, but cannot go beyond this and dele-
gate to others duties, the discharge of which, calling for
the use of reason and discretion, are regarded as public
trusts. (*Scollay* v. *County of Butte*, 67 Cal. 249.)

We do not, however, base our decision upon the
ground that the duties devolving upon respondent are
of such a character as called for the exercise of discre-
tion and judgment, but upon the broader ground that
the statute having confided these duties to the officers
specially designated by law for their discharge, the
supervisors have no authority, express or implied, in
the premises, and hence that the contract was beyond
the jurisdiction conferred upon the board. (*Smith* v.
*County of Los Angeles*, 99 Cal. 628; *El Dorado County* v.
*Meiss*, 100 Cal. 268; *People* v. *Johnson*, 95 Cal. 472.)

The case of *Lassen County* v. *Shinn*, 88 Cal. 510, was
one in which Shinn and Maston, attorneys at law, were
employed by the supervisors to collect from the state
moneys due the county of Lassen on account of the

keeping by the latter of indigent persons, and the contract for their payment was upheld.

The decision went upon the ground that the county being entitled to recover the money, and the board being authorized to appoint attorneys, and the business such as might be supposed to require the services of attorneys, their acts were within the scope of their powers.

It will be seen from the foregoing statement that there is a broad distinction between the underlying principle involved in that case and this. Here the board sought to confer powers upon its agent which it did not and could not be presumed to possess because confided to other hands — to contract for the performance of acts, no one of which could its agent perform for like reasons.

The only reason that can be urged in favor of such appointment must be, we think, that in case of the redemption of property purchased by the state the county becomes entitled to its *pro rata* share of the money paid, and hence is interested in having property so situated redeemed from the tax sale.

The answer to it, if any is required, must be that if the laws which define the methods for redemption in anywise retard the process they should be amended, and that while they exist in their present form the process of redemption cannot be hastened or rendered more effective by ignoring them and the ministers designated for their execution.

These views render it unnecessary to pass upon the validity of the contract between respondent and the state controller and attorney general.

The judgment is reversed and the court below directed to sustain the demurrer to the complaint.

Hearing in Bank denied.