[L. A. No. 4003. Department One.—June 18, 1917.]

FRANK S. TEACHOUT, Respondent, v. LEON J. BOGY et al., Appellants.

LICENSE—SELLING LIQUOR WITHOUT—VIOLATION OF MUNICIPAL CHARTER OR ORDINANCE.—Section 435 of the Penal Code, making it a misdemeanor for any person to carry on a business without a license, where such license is required by any law of this state, is applicable to any person who carries on the business of selling liquor without a license in a city where the same is prohibited by the charter or city ordinance.

ID.—JUDICIAL NOTICE—MUNICIPAL CHARTER.—A city charter, after its approval by the legislature, has the effect of a law, and the court must take judicial notice of its provisions.

ID.—LIQUOR LICENSE IS PERSONAL AND NONASSIGNABLE.—A liquor license is issued in the exercise of the police power as a means of regulating the business of selling intoxicating liquors. It is personal to the licensee and it authorizes him, alone, to carry on the business, if no law authorizes its transfer.

ID.—ATTEMPTED TRANSFER OF LICENSE — CONTRACT FOR CARRYING ON SALOON BUSINESS UNDER TRANSFERRED LICENSE.—A transfer of the paper issued as evidence of the permit to engage in the business of selling intoxicating liquors in the city of Los Angeles did not give the transferees the right to conduct the business, nor exempt them from the prohibition of the city charter forbidding any person to engage in the business without a permit. A contract for the sale of such business and of the license issued to the vendors, and for the subsequent carrying on of the business by the vendees without any other license, is an agreement whereby the vendees were to carry on the saloon business in violation of express law.

CLXXV Cal.—31

ID.—SINGLE CONSIDERATION FOR TRANSFER OF BUSINESS AND LICENSE—VOID PROMISE — SURRENDER OF LICENSE.—The vendees' promise to pay a single consideration for the transfer of such business and license is void, under the provisions of sections 1607, 1608, 1667, and 1668 of the Civil Code, and cannot be enforced by the vendors in an action on the contract. The subsequent surrender of the license and the issuance of a new one to the vendees did not render the promise valid.

ID.—INVALIDITY OF CONSIDERATION FOR PROMISE.—If any part of a single consideration for one or more promises be illegal, or if there are several considerations for one promise, some of which are legal and others illegal, the promise is wholly void, as it is impossible to say which part or which one of the considerations induced the promise.

ID.—OPPORTUNITY TO CARRY ON BUSINESS UNDER NEW LICENSE.—Where the provisions of the contract show that a violation of law was involved in its performance and contemplated by both parties, the fact that the business could have been carried on under a new license for which no provision was made in the contract, and which would have prevented the effect intended by one of its provisions, does not make the contract valid.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge.

The facts are stated in the opinion of the court.

Joseph Scott, and A. G. Ritter, for Appellants.

Ernest B. Coil, for Respondent.

SHAW, J.—The appeal is from the judgment, on the judgment-roll alone.

The plaintiff, as assignee of Adloff & Hauerwaas Company, a corporation, and Goldschmidt Bros., a partnership, sued to recover money alleged to be due upon a contract executed on August 7, 1908, between the plaintiff's assignors, as parties of the first part, and the defendants, doing business as Bogy Bros., as parties of the second part, and for damages for the breach of a covenant therein.

The material parts of the contract are as follows:

"For the consideration hereinafter expressed, to be paid in the manner, and at the times, hereinafter mentioned, said first parties agree to sell to said second parties, that certain lease executed on the first day of July, 1908, by Mary A. Jauch to H. H. Goldschmidt, running for a period of four

years from and after said date, the property covered by said lease being that heretofore occupied by the Casino Cafe, including billiard parlor, cigar stand, etc., and also the license for the conduct of a saloon business on said premises, now standing in the name of Adloff & Hauerwaas. The said lease and license both signed in blank, to be left in the possession of William Preston; and for said lease and license, said second parties agree to pay the sum of sixteen thousand five hundred ($16,500.00) dollars, payable in installments of two hundred and fifty ($250.00) dollars per month, commencing on the first day of September, 1908. All deferred payments to bear interest at the rate of six (6) per cent per annum, payable semi-annually.''

''And in addition thereto, said second parties agree that they will pay the rent mentioned in said lease, at the time the same becomes due, and will otherwise comply with all the terms and conditions of said lease; and will pay any and all licenses as they fall due, necessary for the conduct of the business at said location.''

''And they further agree, during the lifetime of said lease, that they will purchase all draught beer used in and about their said business from the Adloff-Hauerwaas Company; and that all other bulk liquors, etc., they shall purchase for the same length of time from Goldschmidt Bros.''

''Should said second parties fail to make any of said monthly payments of $250, rent, license or quarterly interest for 30 days after they become due, then said first parties reserve the right to cancel this agreement and recover possession of said premises, and said second parties shall thereupon forfeit any sums theretofore paid on account thereof as liquidated damages; but if said second parties shall comply with all the terms of this agreement and pay all sums of money herein provided to be paid, then, and in that event, the said lease and the said license shall be turned over to said second parties, and become their individual property.''

In pursuance of this contract the defendants immediately thereafter took possession of the premises covered by the lease referred to therein and carried on the business of selling liquor in the premises from that time until the beginning of this action on January 15, 1913. They paid the installments of $250 per month due under the contract from September 1, 1908, to and including the payment falling due September

1, 1912, but paid no interest thereon. They refused, for a part of the period mentioned, to comply with the obligations of the contract requiring them to purchase bulk liquors from Goldschmidt Bros. This action was brought to recover the balance due upon the promise to pay the sixteen thousand five hundred dollars, with interest, in monthly installments, as aforesaid, and damages alleged to have accrued by reason of their refusal to buy from Goldschmidt Bros. the liquors used by them in said business. The court made findings and rendered judgment in favor of the plaintiff, both for the balance due on the price and for damages from the breach of the covenant to purchase liquors, amounting in all to the sum of $4,487.95.

The appellants contend that the contract is invalid and unenforceable because of the illegality of a part of the consideration.

At the rate of $250 a month, the price of the lease and the saloon license would not be fully paid until February 1, 1914, a period of five years and five months after September 1, 1908. In the meantime, according to the agreement, the lease and license were to be left with Preston and they were not to be delivered to defendants, nor to become their absolute property, until the end of the period. By the contract the defendants, in effect, agreed to carry on the business of a saloon for the sale of intoxicating liquors on the premises under the license of Adloff & Hauerwaas and pay the license charges thereon as they fell due. The findings show that the defendants did carry on the saloon in that manner until January 25, 1910, and that then, by consent of all said parties, the license was surrendered to the police commission, was canceled and a new license issued to the defendants to conduct a saloon on said premises, and that on the same day the lease was formally assigned to defendants. It also appears that the premises were situated in the city of Los Angeles. At that time, and ever since, the charter of Los Angeles provided that the police commission of the city should have power to grant permits or licenses under and in conformity with the ordinances of the city to persons desiring to engage in the sale of liquors, and further, that "without such permit no person shall engage in the business of selling liquor." (Stats. 1903, p. 570, sec. 95a.) Section 435 of the Penal Code then and ever since provided that every person carrying on a business without a

license, where such license is required by any law of this state, is guilty of a misdemeanor, punishable by fine and imprisonment. This section applies to any person who carries on the business of selling liquor without a license in a city where the same is prohibited by the charter or city ordinance. (*Ex parte Bagshaw*, 152 Cal. 703, [93 Pac. 864]; *Plumas County* v. *Wheeler*, 149 Cal. 758, 768, [87 Pac. 909].)

The respondent suggests that the charter of the city of Los Angeles was not introduced in evidence, and consequently that the court cannot take judicial notice of section 95a aforesaid. There is no merit in this suggestion. The charter has the effect of law; it was approved by the legislature and thereby became a public official act of the legislative department of which the courts must take judicial notice. (Code Civ. Proc., sec. 1875, subd. 3; *Clark* v. *Los Angeles*, 160 Cal. 45, [116 Pac. 722].)

A permit of this character is issued in the exercise of the police power as a means of regulating the business of selling intoxicating liquors. Such permit is personal to the licensee, and it authorizes him alone to carry on the business. There was no law authorizing a transfer of the permit. Hence, a transfer of the paper issued as evidence of the permit did not carry to the transferees the right to conduct the business, nor exempt them from the prohibition forbidding any person to engage in the business without a permit. In so doing they would be guilty of a violation of the law to the same extent as if they had no permit. (Black on Intoxicating Liquors, sec. 130; 23 Cyc. 154; 17 Am. & Eng. Ency. of Law, 232.) The contract was therefore an agreement whereby the defendants were to carry on the saloon business in violation of express law.

The Civil Code contains the following provisions as to the legality of such contracts: "The consideration of a contract must be lawful within the meaning of section 1667." (Section 1607.) "That is not lawful which is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited." (Section 1667.) "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." (Section 1608.) "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or

willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Section 1668.)

The effect of these principles is thus summarized by the author of the article on Contracts in the Cyclopedia of Law and Procedure: "If any part of a single consideration for one or more promises be illegal, or if there are several considerations for one promise, some of which are legal and others illegal, the promise is wholly void, as it is impossible to say which part or which one of the considerations induced the promise. Thus if the consideration for a note or other promise to pay a certain sum of money be the sale of goods, some of which it is legal and some which it is illegal to sell, the note or promise cannot be enforced." (9 Cyc. 566; see, also, 1 Elliott on Contracts, sec. 248; *Moffatt* v. *Bulson,* 96 Cal. 112, [31 Am. St. Rep. 192, 30 Pac. 1022] ; *Vulcan Powder Co.* v. *Hercules Powder Co.,* 96 Cal. 510, [31 Am. St. Rep. 242, 31 Pac. 581] ; *Humboldt Co.* v. *Stern,* 136 Cal. 63, [68 Pac. 324].) The facts in *Moffatt* v. *Bulson* are similar to the case at bar. Moffatt sold to Bulson 560 acres of land and some personal property for the sum of ten thousand dollars. Bulson paid five thousand dollars on the price and executed a mortgage for the remaining five thousand dollars. One tract of 160 acres was at the time held by Moffatt under a homestead claim from the United States upon which he had not then made final proof. For that reason the sale of that tract was illegal and void. (U. S. Rev. Stats., sec. 2262.) The court, quoting section 1608 of the Civil Code, held that the mortgage could not be enforced, and that the fact that Moffatt had subsequently made the final proof and obtained the certificate of purchase for the homestead entry did not render the mortgage valid.

The present case comes clearly within the rule. The promise was to pay sixteen thousand five hundred dollars for the lease and the license. The consideration consisted of several things, one of which, the agreement to transfer the license, contemplating as it did the carrying on of the saloon business by Bogy Bros. without any other license, was illegal. The contract was therefore contrary to an express provision of law and contrary to the policy of express law as defined in section 1667. It had for one of its principal objects, indirectly, if not directly, the violation of law by defendants,

and therefore it was, by section 1668, "against the policy of the law"; the consideration was unlawful, under sections 1607 and 1667; and, as a part of the consideration was unlawful, "the entire contract was void," as provided in section 1608. And under the doctrine stated in *Moffatt* v. *Bulson,* *supra,* the subsequent surrender of the license and the issuance of a new one to the defendants did not render it valid.

The respondent cites cases to the effect that where the complaining party can obtain his relief without aid from the illegal contract, the rule above stated does not apply. There are many authorities to that effect, but they do not apply to the present case. The plaintiff is suing to enforce the promise contained in the illegal contract itself. He cannot prevail except by means of that contract. For the like reason the case does not, as plaintiff claims, come under the rule that when an illegal contract has been executed, the money or property which was the price of it may be a legal consideration for a subsequent promise. As to the part unperformed, the contract is not executed, and the plaintiff is endeavoring to enforce performance thereof.

Respondent further suggests, very briefly, the application of the principle that where a contract can be performed in a legal manner as well as in an illegal manner, it will not be declared void because it was in fact performed in an illegal manner. It is conceivable that the defendants might have ignored the obvious intent and purpose of the agreement that Adloff & Hauerwaas were to retain some sort of control of the license, and might at once have procured a license to themselves under which to carry on the saloon and thus have carried it on legally during the life of the contract. But the principle stated is applied where the contract manifests no intent or purpose that it is to be performed in an illegal manner and where also the party complaining does not participate in, or co-operate with, the illegal performance. In other words, the illegal intent or act of the party in default, not essential to a proper performance, will not vitiate the contract so as to affect the rights of the other party who was guiltless of any participation or co-operation therein. But here the contract clearly shows that the full right to the license was to be withheld from the defendants in order that it might afford security to the sellers for the payment of the money, while, in the meantime, the saloon would be carried on

by the defendants on their own account and without any other license. That this was the understanding of the parties themselves as to the effect of the contract is shown by the fact that when, sixteen months afterward, the new license was obtained, the written consent of Adloff & Hauerwaas thereto was attached to the application for the change of license presented to the police commission, and that the new license was, as the court finds, issued "pursuant to said consent." The provisions of the contract show that a violation of law was involved in its performance and contemplated by both parties. In such a case, the fact that the business could have been carried on under a new license for which no provision was made in the contract and which would have prevented the effect intended by one of its provisions, does not make the contract valid.

It is not claimed that the contract required the defendants to carry on the saloon as the agents and servants of Adloff & Hauerwaas, the licensee. The contrary is necessarily implied from its terms. They were to purchase from Adloff & Hauerwaas Company the draught beer and from Goldschmidt Bros. the bulk liquors kept in the saloon. This beer and liquors was to constitute a part of their stock in trade. They would own it and they were to sell it at retail for their own profit.

It cannot be successfully claimed that the covenant to buy the beer and liquors from the parties of the first part was a separable part of the contract, free from the taint of the illegality arising from the contemplated violation of law. According to the intention of the parties, it was this beer and liquor which the defendants were to sell in the saloon without a license in violation of the law. Moreover, this performance of the covenant was a part of the benefit which the defendants were to render to the other parties in consideration of the transfer of the lease and license, a consideration therefor in addition to the sixteen thousand five hundred dollars agreed to be paid. Consequently the covenant was as much affected by the illegality as the promise. The court below erred in holding the contract lawful.

The judgment is reversed.

Sloss, J., and Victor E. Shaw, J., *pro tem.*, concurred.

Hearing in Bank denied.