[Sac. No. 2992. In Bank.—June 16, 1921.]

## C. E. SKIDMORE et al., Petitioners, v. GEORGE C. WEST, as Treasurer, etc., Respondent.

[1] COUNTIES—LANDS SOLD FOR DELINQUENT TAXES—EXAMINATION OF RECORDS AND REPORT TO SUPERVISORS—DUTY NOT ENJOINED ON COUNTY OFFICERS.—A contract between a board of supervisors and private parties calling for the examination of certain records in the offices of the tax collector, county auditor, and county recorder, the state surveyor-general's office and the United States land office with relation to lands sold to the state for delinquent taxes for a period covering many years, and calling for a report thereon to the supervisors with recommendations as to further disposition, accompanied by lists for authorization from the state controller for sale by the tax collector, does not provide for the performance by such parties of duties which the law enjoins upon officers of the county.

[2] ID.—MAKING OF REPORTS BY COUNTY OFFICERS—POWER OF SUPERVISORS—CONSTRUCTION OF CODE.—The provision of subdivision 1 of section 4041 of the Political Code, giving boards of supervisors the power to require the making of reports by all county officers, is limited to such reports as they are required by law to make and to such other reports as are incidental to the general supervision given to the supervisors of the official conduct of such officers.

[3] ID.—SALES OF PROPERTY SOLD FOR DELINQUENT TAXES—OBTAINING OF NECESSARY INFORMATION BY SUPERVISORS—CONTRACT WITH PRIVATE PARTIES — POWER OF SUPERVISORS — EFFECT OF CODE AMENDMENTS.—In view of the amendments of 1905 and 1913 to section 3897 of the Political Code, giving boards of supervisors certain functions with relation to sales of unredeemed property sold to the state for delinquent taxes, the board has the power to enter into a contract with private individuals for the purpose of obtaining the information reasonably essential to the proper discharge of such functions and to pay such parties for their services a percentage of the moneys received by the county from such sales.

[4] ID.—RECOMMENDATIONS AND SUBMISSION OF LISTS—VALIDITY OF CONTRACT UNAFFECTED—The requirement in a contract between a board of supervisors and private parties with reference to the examination of certain records of county officers relating to lands sold to the state for delinquent taxes, that such parties should include with their report recommendations as to further disposition of the property and submit lists for authorization from the state controller to advertise and sell under section 3897 of the

Political Code, does not invalidate the contract on the ground that it calls for the performance of duties enjoined upon county officers, since it is subject to the construction that the parties should submit as a part of their report a list of unredeemed properties as to which the board might properly take action.

[5] ID.—REPORT OF DEBTS DUE COUNTY — DUTY OF OFFICIALS — CODE PROVISIONS INAPPLICABLE TO CONTRACT.—A contract between a board of supervisors and private parties for the furnishing of information necessary for the board to determine its future action in relation to the sales of property sold to the state for delinquent taxes that the county might receive its proportion of the proceeds of such sales, is not rendered invalid because some of the requirements are required of county officers under sections 3716 and 3728 of the Political Code, since such provisions refer to reports of "debts" due the county, and after the sale and deed to the state for taxes there is no longer any "debt" or "indebtedness" due the county.

[6] ID.—WISDOM OF CONTRACT—MATTER FOREIGN TO COURTS.—In the absence of a claim of fraud or mistake, the courts have nothing to do with the wisdom of a contract between a board of supervisors and private persons calling for services to be performed for the board with a view to such action as it might properly and advisedly take looking to proceedings for the sale by the state of unredeemed property sold to the state for taxes, in order that the amount of money due the county on account thereof might be obtained and paid into the county treasury.

PROCEEDING in Mandamus to compel the payment of a warrant for services in collection of delinquent taxes. Writ granted.

The facts are stated in the opinion of the court.

Raymond Benjamin for Petitioners.

J. B. Landis, District Attorney, Fred P. Tuttle, Jr., and Meredith, Landis & Chester for Respondent.

Hugh B. Bradford and C. C. McDonald, *Amici Curiae.*

ANGELLOTTI, C. J.—This is a *mandamus* proceeding to compel the payment by respondent, treasurer of Placer County, of a warrant for $2,231.48 issued by the county auditor upon a claim of petitioners allowed by the board of supervisors of the county. The matter was submitted upon a general demurrer to the petition. The only question pre-

sented is whether the purported contract between petitioners and the county of Placer, made on behalf of the county by its board of supervisors, was in excess of the authority of such board and therefore void.

The material facts shown by the petition are substantially as follows: On March 5, 1918, more than one thousand parcels of land in Placer County which had been sold to the state for delinquent state and county taxes, the delinquency in such case being prior to 1912, remained unredeemed, and unsold by the state, and none of the assessments thereon had ever been canceled. The result was that Placer County had not received any of the money coming to it on any of said assessments. Under these circumstances the board of supervisors entered into the contract here involved with petitioners, neither of whom was an officer of the county. The contract is evidenced by a resolution of the board, and is as follows:

"It is ordered that C. E. Skidmore and A. L. Kramer be and they are hereby authorized to check deeds to the state, by the Tax Collector of Placer County, California, for delinquent taxes as shown in books of tax deeds numbered one to nine inclusive covering approximately 1000 deeds, that do not show redemption cancellation or sale on deeds or certificates of sale, and submit report covering each deed together with recommendations as to further disposition of same and submit lists for authorization from State Controller to advertise and sell as provided for by Section 3897, Pol. Code, and that in payment of such services the County of Placer will pay said Skidmore and Kramer, a commission, equal in amount to 50 per cent of Placer County's proportion of all moneys collected from and after this date, from redemption or sales of property, which has gone delinquent to the county, prior to the year 1912.

"Said 50 per cent commission is based upon the County's proportion of money received after this date, and applies only to money actually collected by the county.

"Payments to be made at the time of the regular monthly meetings of the Board of Supervisors for the amounts due on said date.

"No payments to be made, however, until the said Skidmore and Kramer have furnished an affidavit setting forth that they have checked the records at the U. S. Land Office,

the State Surveyor General's office, the County Recorder's office, and the County Auditor's office, and have submitted to the Board of Supervisors their report and recommendations as hereinabove provided, and until a certificate is received from the County Auditor showing the amount that has been paid to the county, as its share of the money collected from such redemption sales, of property examined and reported on by said Skidmore and Kramer, from date hereof.

"Dated: This 5th day of March, 1918."

The work so contracted for was fully completed by petitioners and the result of the action initiated by the supervisors upon the report of petitioners was that between March 5, 1918, and August 29, 1918, there was paid into the county treasury as Placer County's proportion on account of redemptions and sales of said parcels of land the sum of $4,462.96. Under the terms of the contract petitioners are entitled to a sum equal to one-half of this amount, and this is the sum specified in their warrant, which the treasurer refuses to pay.

It is conceded by learned counsel for petitioners that authority in law is essential to action by the board of supervisors, and that such board is without authority in law to contract with private parties for the performance of duties which the law enjoins upon county officers.

[1] In so far as its express terms are concerned, we are not strongly impressed by the claim that this contract provided for the performance by petitioners of duties which the law enjoins upon officers of the county. According to such terms it appears to be confined, in so far as petitioners are concerned, to an examination of certain records in certain county offices, the state surveyor-general's office, and the United States land office, with relation to the parcels of real estate sold to the state for taxes delinquent prior to the year 1912, which covered a period of many years, and a report thereon to the supervisors with their recommendations as to further disposition, accompanied by lists for authorization from the state controller for sale by the tax collector. And this was for the information of the board of supervisors, with a view to further proceedings by them. The county officers involved were those of the tax collector, the county auditor, and the county recorder. We find no statute enjoining upon any of these officers the duty to make in their

respective offices the examination and report thus called for, even if called upon by the supervisors to so do. An examination of the statutes prescribing their duties fails to disclose anything that can fairly be so construed. [2] Respondent relies in this connection upon subdivision 1 of section 4041 of the Political Code, the section prescribing the powers of the board of supervisors, which says they have power "to supervise the official conduct of all county officers . . . ; to see that they faithfully perform their duties, direct prosecutions for delinquencies, and, when necessary, require them to renew their official bonds, make reports and present their books and accounts for inspection." Manifestly, the provision here as to the power to require the making of reports is limited to such reports as the officers are required by law to make and to such other reports as are incidental to the general supervision given to the supervisors of the official conduct of the officers. The case of *County of Humboldt* v. *Stern,* 136 Cal. 63, [68 Pac. 324], also relied on, is not in point for the reason that the office there involved was that of county clerk, the incumbent of which was under the law *ex-officio* clerk of the board of supervisors, and who by express mandate of law was required to "perform all other duties required by law, or any rule or order of the board." It was very properly held therein that it was his official duty, in response to an order of the board, to furnish the board with data from its records. The words of the contract here were very carefully limited to services to be performed *for* the board of supervisors, with a view to such action as they might properly and advisedly take under the law looking to proceedings for the sale by the state of unredeemed property sold to the state for taxes, in order that the amount of money due the county on account thereof might be obtained and paid into the county treasury, and we cannot see that in any respect it called for the performance of duties which were *enjoined by law* upon any county officer.

[3] In the determination of the question of the power of the board of supervisors to contract for the services here involved, we are brought to a consideration of the question of the functions and powers of the board with regard to property sold to the state for taxes. When property is thus sold under our system, the county does not receive its por-

tion of the tax until the property is redeemed or sold under
direction of the state controller by the tax collector of the
county.  Until the year 1905, section 3897 left the matter of
such a sale entirely in the hands of the state controller, pro-
viding for a sale by the county tax collector only on direc-
tion of the controller, and in so far as the law was concerned
there was nothing for any other officer or for the county
to do in the matter until the controller gave such direction.
As is still true, every step subsequent to such direction, both
as to redemption and sale, was prescribed by statute, and the
public officer by whom it was to be taken designated.  The
supervisors had no function whatever to perform in the
matter.  While the law was in this condition, the case of
*House* v. *Los Angeles Co.*, 104 Cal. 73, [37 Pac. 796], was
decided.  The supervisors of Los Angeles County made a
contract with one House, under which the latter was to col-
lect from owners, by causing them to redeem, what might
be due on account of taxes on real estate sold to the state,
and for which services he was to be paid a percentage
(fifteen per cent) on the amount so collected.  It was held,
after a careful review of the statutes relative to the matter,
that the board of supervisors had no voice whatever in the
matter and could not intervene to accelerate or retard a re-
demption, and that the law having confided the duties to be
performed in such matters to officers specially designated
for their discharge, the supervisors have no authority, express
or implied, in the premises, and hence that the contract was
beyond the power conferred upon the board.  The opinion
as a whole clearly holds, as is stated in a syllabus, that the
supervisors had no power or authority to enter into a con-
tract with a private individual to proceed and cause to be
collected from owners what may be due on account of sales
of real estate made to the state for delinquent taxes, and to
pay him a percentage upon such collections, and also that the
supervisors had no function whatever to perform in the
matter.  If it had not been for certain amendments of sec-
tion 3897 of the Political Code, there could be no claim, in
view of this decision, that the contract here involved was
valid.  These amendments are here relied upon by peti-
tioners.  The amendment of 1905 [Stats. 1905, p. 31], modi-
fied the effect of a provision of the section that at the sale
no bid shall be accepted "for less than the amount of all

the taxes levied upon such property, and all interest, costs, penalties, and expenses up to the date of such sale," by providing further that if the board of supervisors of the county shall, by resolution entered on their minutes, declare that in their judgment the property described in the resolution "is not at that time of value great enough that it can be sold by the state" for such a sum, and that it would be to the best interest of the state to sell for a lesser sum, to be stated in the resolution, "upon receipt of a copy of said resolution, certified by the clerk of said Board of Supervisors, *the State Controller may thereupon,* by written authorization, direct the tax collector to sell for such lesser sum." In 1913 [Stats. 1913, p. 559], the section was further amended by the addition of a proviso which impliedly authorizes the board of supervisors to direct the tax collector of the county "to apply for an authorization of sale of any property which has been deeded to the state" and to "authorize him to order the necessary advertising [in case a sale is authorized by the controller] to be done at county expense." These are the material amendments relied on. Their effect was to devolve certain functions in the matter of these sales on the board of supervisors, for the exercise of their judgment and discretion. Those functions substantially were, first, in the event that their judgment was that any property sold to the state for taxes was not of value great enough to sell for the whole amount due, and that it would be to the best interest of the state to sell for a lower specified sum, to so say by resolution, a certified copy of which transmitted to the state controller would authorize him to fix a lower sale price; and, second, to direct the tax collector to apply to the state controller for an authorization to sell any property deeded to the state, and to authorize him (the tax collector) to do the necessary advertising at the county expense. It cannot be doubted that the board of supervisors had the power to obtain such information as was reasonably essential to a proper discharge of these functions, even to the extent of contracting for the furnishing thereof at the expense of the county, if it was not the official duty of some county officer to furnish the same, for it is well settled that such a board has such powers as are necessary to the discharge of duties imposed by law. We cannot say that any of the information required by the contract here

involved may not reasonably have been deemed by the board essential to a proper determination of the question whether there was unredeemed property as to which it was advisable to initiate proceedings for a sale in view of the consequent risk of expense to the county, and of the question of the amount for which the property could be sold, with a view to recommending a lower price where it was deemed inadvisable to proceed on the basis of the whole amount due. Necessarily, the board must be held to be invested with considerable discretionary power in determining what information is essential to its intelligent action, and in such matters the courts may not properly interfere unless it is apparent that the service contracted for has no possible relation whatever to a proper discharge of its functions.

[4] Special objection is made as to the requirement of the contract that petitioners should include with their report their "recommendations as to further disposition of the property" involved, and should submit "lists for authorization from State Controller to advertise and sell under 3897 Political Code." As to the recommendations, which were, of course, simply an expression of the conclusion of the investigation whether or not, in view of the data, which they had collected as to title and value, sale proceedings could be initiated to advantage, we feel that it cannot fairly be held that the board was without power to have for its guidance the advice contracted for. Exactly what was meant by the requirement that lists for authorization from the state controller should be submitted we do not know, but we do not feel warranted in construing it for the purpose of invalidating the contract, as referring to the actual manual work of preparing the resolutions of the board or the applications to be made by the tax collector to the controller in the event that such application is directed by the board. These, of course, would be duties enjoined upon officials. We are inclined to the view that it means no more than that the petitioners must submit as a part of their report a list of the unredeemed properties as to which the board may properly take action.

[5] It has been suggested here that certain sections of the Political Code other than section 4041 enjoin upon certain county officers the duty to make reports which would furnish some of the required information. Consideration of

those sections has satisfied us that this may not fairly be held. In so far as those sections refer to reports of "debts" due the county, they can hardly be held to cover anything here involved, for after sale and deed to the state for the taxes there is no longer any "debt" or "indebtedness" due the county in the real sense of those words, or in the sense contemplated by these sections (see sec. 3716, Pol. Code). In so far as certain other sections are concerned, as, for instance, section 3728 of the Political Code, the reference is only to ordinary current reports which would not cover any period of time involved in the work here contracted for by the board. For instance, the report called for by section 3728 of the Political Code is an annual report to be prepared "from the 'assessment-book' of" the current year. It seems to us an undue strain of any of the sections to which reference is made, either in the opinion previously filed or in any of the briefs, to find therein authority for the proposition that in contracting for the work called for, the supervisors included work within the scope of the lawful duty of any county officer to perform.

[6] With the question of the wisdom of this contract in so far as the county was concerned, and especially with regard to the method and amount of compensation provided, the courts have nothing to do, in the absence of a claim of fraud or mistake. There is no pretense of any such claim in this matter. The question in this proceeding is simply one as to the *power* of the board, and in view of the amendments to section 3897 of the Political Code, we see no escape from the conclusion that the contract was one within the *power* of the board to make and that the petitioners are entitled to the relief sought. It should be noted that this was the conclusion of the district court of appeal of the third appellate district, which court first heard the matter.

Let a peremptory writ of mandate issue as prayed in the petition.

Olney, J., Shaw, J., Lawlor, J., Lennon, J., and Sloane, J., concurred.

WILBUR, J., Dissenting.—I dissent. The petition and argument upon rehearing have not changed my opinion in regard to the matter. In view of the fact that many of the

code sections cited in the previous opinions had not been discussed by the parties in their briefs, it was proper to grant a rehearing for the purpose of considering such arguments as might be presented in regard to their meaning or effect. Nothing has been presented, however, which changes my opinion in the matter, although it is true that there was an inadvertent statement in the opinion concerning the effect of section 3680 of the Political Code, it being the duty of the tax collector and not the assessor to mark upon the tax bills the words "Sold to the State." Omitting the words "and tax bills" thus inadvertently used, and also omitting the statement of facts which is contained in the main opinion, that opinion is as follows:

"The work so contracted for was fully completed by petitioners, and the result of the action initiated by the supervisors upon the report of petitioners was that between March 5, 1918, and August 29, 1918, there was paid into the county treasury as Placer County's proportion on account of redemptions and sales of said parcels of land the sum of $4462.96. Under the terms of the contract petitioners are entitled to a sum equal to one-half of this amount, and this is the sum specified in their warrant which the treasurer refuses to pay.

"If the action of the board of supervisors was unwarranted in law, in whole or in part, the petitioners are not entitled to the writ. The respondent claims that it was the duty of county officials to perform a very substantial part of the labor that the petitioners agreed to perform, and that the contract was therefore void, citing as authority for that conclusion, *County of Humboldt* v. *Stern*, 136 Cal. 63, [68 Pac. 324], wherein it was held that as it was the duty of the county clerk to 'perform all other duties required by law, or any rule or order of the board,' it was his duty to furnish the board such data from the records of his office as they might require. In this case the contract required the petitioners to examine the records of the tax collector and report the result to the supervisors for the purpose of securing the authority of the state controller for a sale as provided by section 3897 of the Political Code. Petitioners were also to 'check the records in the county auditor's office.' If it was the duty of the tax collector or of the auditor or other county officer to furnish the required data, the supervisors

could not under their general powers employ other persons to perform such duties of such county officers at the expense of the county. The provisions of the law fixing the powers and duties of the various officers of the state and county in respect to the assessment and collection of taxes, before and after delinquency, are found in numerous provisions of the Political Code, relating to taxation and to county government. The powers and duties of the board of supervisors are defined in section 4041 of the Political Code, subdivision 1 of which provides that they shall have power 'to supervise the official conduct of all county officers . . . to see that they faithfully perform their duties, direct prosecutions for delinquencies and, when necessary, require them to renew their official bonds, make reports and present their books and accounts for inspection.' This power would give the supervisors access to all the information needed, or by petitioners agreed to be furnished, from such records. If it be doubted whether the power to require the officers 'to make reports' is sufficiently broad to require them to search the records to determine the amount of unpaid taxes, due upon property sold to the state, there are other sections of the code requiring reports from county officers concerning the financial condition of the county which may properly be considered in that connection. . . . Section 3737 of the Political Code requires an annual report of the auditor in regard to the financial condition of the county, including a statement of the indebtedness of the county, the property of the county, the amount in the treasury subject to the payment of such indebtedness, the rate of taxation, the assessed value of the property in detail for the year, and 'Fifth, such other information as the Board of Supervisors or the controller of the state may require.' There is little doubt that the supervisors would be entitled under this section to require a list of the deeds made to the state as shown by the auditor's books, if, by reason of a plan to enforce payment thereof, such information was necessary to determine the financial status of the county and its fiscal policy, particularly as the auditor is required each year to compile for the assessor 'a complete and true statement of all property which has been redeemed under or by virtue of any sale made to the state for delinquent taxes, together with a complete and true statement of *all property sold to the state and remaining unredeemed.*' (Sec. 3678,

Pol. Code, and Amdt. 1917, [Stats. 1917, p. 430]. See, also, sec. 3739, Pol. Code.) This list would include all property sold to the state, whether deeded or not, as it is subject to redemption both before and after such deed. (Pol. Code, secs. 3780, 3817.) Such information is necessary for the assessor, for until the deed he must continue to assess the property (Pol. Code, sec. 3813), and mark upon the assessment and tax bills therefor 'sold to the state,' with date of sale (Pol. Code, sec. 3680), and after deed should omit such assessment (see Pol. Code, secs. 3787, 3607, 3813, 3773) until the property again passes into private ownership by reason of sale or redemption, which fact must be reported by the tax collector or auditor, as the case may be, to the assessor annually (Pol. Code, sec. 3898, amended Stats. 1907, p. 699; Stats. 1913, p. 560, subd. 3; Stats. 1917, p. 715, subd. 3; sec. 3739; Stats. 1897, p. 431). By section 4099 of the Political Code the treasurer and auditor are required quarterly to make a joint report to the board of supervisors, and at such other time as the board may require, showing the sources of county revenue, distribution of the revenue into funds, the total amount of warrants drawn and paid, and to 'generally, make a full and specific showing of the financial condition of the county.' It must be obvious that where uncollected taxes form a sufficiently important item of county revenue to justify an unusual effort to collect such taxes, that such financial statement or report should include a detailed statement of such taxes, if so required by the board of supervisors. The state controller is ordinarily charged with the duty to direct the sale of lands deeded to the state (sec. 3897, Pol. Code), and upon such authorization it is the duty of the tax collector to give the necessary notice of sale, and for that purpose to prepare the necessary lists of lands to be sold. The supervisors, however, may by resolution direct the tax collector to apply to the state controller for authority to sell, and in that event to make the advertising expenses a county charge. They may also, in the event that they so find the fact, certify their opinion that certain properties so deeded to the state are not of sufficient value to sell for the amount of the tax. It is upon these provisions of the law, added by amendment after the decision of this court in *House* v. *Los Angeles*, 104 Cal. 73, [37 Pac. 796], that petitioners rely to distinguish their contract from the con-

tract there held invalid. The power of the supervisors to enter into the contract in this case is asserted on the ground they were entitled to have before them the information which petitioners agreed to furnish, in order that they might determine therefrom whether or not to direct the tax collector to apply for authority to sell and whether or not to certify that some of the lands deeded to the state were worth so much less than the taxes thereon as to require an authorization for a sale for less than such tax, penalties, and costs. It is not claimed that the supervisors found any piece of property so deeded to be of such small value as to require the latter resolution, nor is it claimed that there were any circumstances which indicated the necessity of an investigation to ascertain that fact. We may assume, however, for the purposes of this decision that the authority of the board of supervisors to initiate proceedings for the sale of property deeded to the state was sufficient to authorize them to secure such data as was necessary to determine the desirability of initiating such proceedings, and the question of whether or not they should invoke an authorization from the controller to sell for less than the total amount of taxes, penalties, and costs. It is clear from the foregoing provisions of the Political Code with reference to the duty of county officers to furnish reports and information required by the board of supervisors in relation to county finances, etc., that it was the duty of such officers when required by the board of supervisors to furnish all data necessary to show the amount of unpaid taxes, penalties, etc., upon land deeded to the state, and the amount of land so deeded, together with such other information ascertainable from their respective books and records as the supervisors deem necessary for their enlightenment in exercising their authority in the premises. In view of this duty on the part of county officers, the contract of the board of supervisors with the petitioners, in so far as it agreed to compensate them for furnishing information which it was the duty of the county officers to furnish was unauthorized and void. With reference to such portions of the work performed by petitioners under their contract as were not by law required to be done by the various county officers, it is sufficient for the purposes of this case to say that where a substantial part of the duties agreed by petitioners to be performed were contracted for in violation of the law,

the contract being entire, the whole contract is void. (Sec. 1608, Civ. Code; *Humboldt County* v. *Stern*, 136 Cal. 63, [68 Pac. 324]; *Teachout* v. *Bogy*, 175 Cal. 481, 486, [166 Pac. 319].)"