[Civ. No. 1131. Fourth Appellate District.—July 14, 1934.]

CAVE J. COUTS, Respondent, v. COUNTY OF SAN DIEGO (a Municipal Corporation) et al., Appellants.

Thomas Whelan, District Attorney, and Edward W. Goodman, Deputy District Attorney, for Appellants.

Clark & Hopkins for Respondent.

HAINES, J., *pro tem.*—In the early part of June, 1932, the board of supervisors of San Diego County undertook to appoint one J. W. Cole as county road superintendent, at a salary of $3,600 per year, such duties and salary to begin as of July 1, 1932, and on June 6, 1932, adopted a resolution in the words and figures following:

"In the Matter of the County Road Superintendent:

"Resolution Defining Duties of County Road Superintendent.

"Whereas, the Board of Supervisors has heretofore determined to employ a registered engineer as County Road Superintendent, and has selected J. W. Cole as such road superintendent and fixed his salary at $3,600 per year, payable monthly, and has determined that said employment shall begin with the next fiscal year,

"Now, therefore, on motion of Supervisor Hornbeck, seconded by Supervisor McMullen, it is hereby resolved as follows:

"1. That before entering upon his duties, said road superintendent give a surety company bond to the County of San Diego, to be approved by the Chairman of this Board, in the sum of $5,000 Dollars, the cost of said bond to be paid by the County of San Diego.

"2. That under the supervision of this Board and of the road commissioners of the respective districts, said road superintendent shall have charge of the maintenance of all County highways.

"3. That unless otherwise ordered by this Board, engineering work upon county highways shall be under the direction of the County Surveyor, subject to the approval of the road superintendent.

"4. That unless otherwise ordered by this Board, construction work on County highways done by contract shall be under the direction and shall be inspected by the County Surveyor as has been the procedure heretofore. Provided, however, it shall be the duty of the road superintendent to supervise generally all contract work.

"5. Said road superintendent shall maintain his office in the City of San Diego at such place as this Board may designate.

"6. Said County road superintendent shall organize his department substantially as set forth in report prepared for this Board by J. W. Cole and filed with the Clerk of this Board.

"Provided, however, that final plans for the organization of the department shall be submitted to this Board for approval before being put into effect.

"7. The Statistical Department heretofore maintained by this Board shall be transferred to the department of the road superintendent and shall be under the direction of the road superintendent from and after July 1st, 1932.

"8. Beginning July 1st, 1932, said road superintendent is allowed one stenographer at a salary of $100 Dollars per month.

"9. Subject to the approval of this Board, said road superintendent shall employ such assistants, foremen and laborers as may be necessary to carry on the work of the department in an efficient and economical manner.

"10. Said road superintendent shall perform such other and further duties as may from time to time be required of him by this Board and the respective road commissioners of the County.

"11. Disagreements between the superintendent and any of the road commissioners shall be submitted to this Board for adjustment—the decision of the Board shall be final."

Thereafter, on July 19, 1932, plaintiff and respondent Cave J. Couts, as a resident and taxpayer of the county, brought the present action naming as defendants the members of the board of supervisors of said county, the county auditor, and the county treasurer, who constitute the appellants here, asserting the illegality of the board's action and seeking to have the said resolution of June 6th adjudged void and the auditor and treasurer respectively enjoined from issuing or paying any warrants for compensation thereunder. Appellants demurred to the complaint and also filed an answer admitting the action of the board alleged but setting up more fully what they claimed their position to be. In this pleading it was among other things alleged:

"That prior to the employment of the said John W. Cole as road superintendent, it had been the custom and practice of the several supervisors of the county of San Diego, in their capacity of *ex officio* road commissioners, to conduct the work of maintaining, repairing and improving the roads of their respective districts as separate units; that under the system as heretofore conducted, it has been necessary to have an independent office and bookkeeping system in each Supervisorial district. The statistical records required to be kept by the board of supervisors under

the provisions of Political Code section 2655a being picked up by the statistical department from the reports of the several road commissioners and from the county auditor's records; that under the proposed system, all bookkeeping will be done at the office of the road superintendent in the court house; that under the proposed system, the ministerial work of supervising all road maintenance work in the county will be concentrated under the road superintendent; that for the further purpose of unifying the road work within the county, to the end that the same and the necessary bookkeeping and statistical work might be conducted more efficiently and economically, the said board of supervisors employed the said John W. Cole as such road superintendent.''

It was also alleged in the answer that a large portion of the roads and public highways in the County of San Diego had been constructed under the provisions of the ''Improvement Act of 1907''. The reference seems to have been taken by the trial judge to be to the act of March 21, 1907, known as the ''Road District Improvement Act of 1907'' (Stats. 1907, p. 806). We think, however, that the context shows it to have been to the act of March 19, 1907, commonly known as the ''Good Roads Act'' (Stats. 1907, p. 635), in connection with which the answer sets up that the employment of a road superintendent by the board, to have charge of the repairs and maintenance of roads so improved is expressly authorized by section 2646 of the Political Code. There is annexed to the answer an extended schedule of roads within the county stated to have been constructed or improved ''under the provisions of the act of 1907 above mentioned''.

The demurrer to the complaint was overruled and the case tried upon its merits, affidavits by consent or otherwise having been apparently used as evidence; whereupon, without filing any findings of fact or conclusions of law, the court entered judgment granting the injunction prayed, and from this judgment the present appeal is taken.

There is printed in respondent's brief a memorandum opinion of the trial judge on initially rendering the judgment and a further memorandum opinion by him on denying a motion to enter a different judgment and a motion for a new trial. The reason given for the decision is in brief that the action complained of amounted in reality to

an unlawful delegation of duties imposed under section 2641 of the Political Code upon the several members of the board as *ex-officio* road commissioners within their respective districts to a single person not appointed by them as individuals but by the board, whereby the board undertook to place said appointee "in charge of the maintenance of all county highways". The reason given for not making findings was that the trial judge deemed the issue one of "law alone".

So far as the instant case is concerned the questions involved have become pretty largely moot, inasmuch as Cole could not have acted as road superintendent for any longer period than that which intervened between July 1, 1932, when his duties were to begin, and July 30, 1932, when the judgment was entered enjoining further proceedings under the board's resolution, and since then the whole situation has been changed by the adoption of the county charter of San Diego County, effectual July 1, 1933 (Stats. 1933, p. 2814 et seq.), by section 16 of which the county surveyor is made *ex-officio* road commissioner, so that, at all events for the future, the board's action has been thus superseded. We should, therefore, dismiss the present appeal as having become of merely academic importance were it not for the possibility that some act done between July 1, 1932, and July 30, 1932, by Cole while undertaking to act under the board's appointment may hereafter come in question or some claim for his compensation be made. Since, however, the record does not exclude this possibility, we feel constrained to decide the case on its merits. The absence of findings leaves it in a somewhat peculiar position. The language of the resolution of June 6, 1932, above quoted, makes it plain that the board had taken some sort of previous action, the substance of which this resolution purports to recite. The resolution of June 6th is mainly concerned with defining the duties of a road commissioner purporting to have been previously appointed. The answer has set up minutes of the board of supervisors of June 2, 1932, authorizing the employment of Cole in that capacity. The taking of the action recited is, of course, deemed denied and there is no finding that it was taken. Since, however, appellants were entitled to have a finding made on the subject it is perhaps fairer to assume, for the purpose of

determining whether the present judgment can stand, that they either did prove or would have been able to prove the allegations of their answer, so far as these were allegations of fact, including the authorization of Cole's employment. This leaves it still necessary to determine whether his employment in such circumstances as are recited in the resolution of June 6th was, together with the further provisions made in that resolution itself, a matter within the power of the board.

There is no question, of course, as said in 7 California Jurisprudence, page 449, section 41, cited for appellants that "boards of supervisors are creatures of the statute and the authority for any act on their part must be sought in the statute," but it is equally true, as there said, that "while their jurisdiction is confined within the statutory limits, still it includes not only the powers expressly enumerated but also those implied powers which are necessary to the exercise of the powers expressly granted except in the instances where such implied power is expressly or impliedly prohibited". (See particularly *County of San Joaquin* v. *Budd,* 96 Cal. 47, 52 [30 Pac. 967].) It is laid down in terms in section 2639 of the Political Code that "the boards of supervisors of the several counties of the state shall have general supervision over the roads within their respective counties . . ." It is true that under section 2641 each county is to be divided by the board into suitable road districts and each supervisor is required *ex-officio* to act as road commissioner in his particular supervisorial district, one of his duties, however, being to "see that all orders of the board of supervisors pertaining to the roads in his district are properly executed". By the further provisions of the section he is allowed traveling expenses within limits therein prescribed, but this does not mean that he is charged with more than the general oversight of what goes on there. Manifestly in a large county he must confide to others the exercise of such detailed oversight. It does not seem to us, in view of the powers and duties thus respectively conferred upon the board as such and upon the supervisors as individuals within their respective districts, that there is any more inherent reason why a single road superintendent may not be employed to function in all of the districts at once, subject in each respective district to the direction of the

supervisor who constitutes the road commissioner for that district, than there would be to preclude employment by the board or a particular supervisor of a road foreman to function within a particular district, nor is the circumstance that a stenogapher is allowed such single superintendent any more an anomaly than as though one had been allowed to each road foreman in each several district, if the duties lawfully confided to him by the supervisor to whom he looked for directions properly involved the services of such stenographer. If there is one thing manifest in the resolution of June 6, 1932, it is that in spite of the broad powers given to the road superintendent it was the intention of the board that no one of its members should abdicate his individual functions within his individual district nor the board abdicate the more general functions entrusted to it by section 2639, and we think that that circumstance is decisive of the case.

In our opinion the employment of the road superintendent did not in this case purport to be the appointment to an office nor did the action of the board in creating the position of road superintendent undertake to create any office. So far as we can see it was an employment pure and simple and an employment incidental to powers which the supervisors were charged with exercising. In this we are confirmed by the view taken in *Skidmore* v. *West*, 186 Cal. 212 [199 Pac. 497]. This case, moreover, is instructive not only on the proposition of the general power of the board to perform such acts as are incidental to its statutory functions but also on the further proposition that the board has the power to obtain such information as is reasonably necessary to the proper discharge of its functions and, therefore, that the statistical information which it was made part of the duty of the road commissioner to gather is such information as the board might properly employ someone to compile. As contradistinguished from such an employment as that here involved a public office is essentially an exercise in some sort of the state's sovereignty and as was noted by our Supreme Court in *Patton* v. *Board of Health*, 127 Cal. 388, 394 [59 Pac. 702, 78 Am. St. Rep. 66], quoting from the opinion of the judges given to the Governor in the appendix to 3 Me. 481: "The term 'office' implies a delegation of a portion of the sovereign power to, and possession

of it by, the person filling the office and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office." The opinion further elaborates the subject as follows:

" 'The power thus delegated and possessed may be a portion belonging to some one of the three great departments, and sometimes to another; still it is a legal power, which may be rightfully exercised, and in its effects it will bind the rights of others, and be subject to revision and correction only according to the standing laws of the State. *An employment merely has none of these distinguishing features.* A public agent acts only on behalf of his principal, the public, whose sanction is generally considered as necessary to give the acts performed the authority and power of a public act or law. And if the act be such as not to require such subsequent sanction, still it is only a species of service performed under the public authority and for the public good, but not in the execution of any standing laws, which are considered as the rules of action and the guardians of rights.' "

It is manifest that the powers conferred upon the road superintendent as set out in the resolution of June 6, 1932, were not of this character but that such superintendent was a mere subordinate in some respects of the board as a whole and in some respects of individual supervisors and it seems to us in these circumstances that the situation was strictly that of an employee and not of an officer at all.

In our view this case is in no way analogous to *Forward* v. *County of San Diego,* 189 Cal. 704 [209 Pac. 993], strongly relied on by respondent. It was there holden to be a violation of section 9, article XI, of the state Constitution as it existed prior to the amendment of 1924 and also of section 5 of said article, as it then existed, to provide for an advisory board to co-operate with the county assessor in making the annual appraisement of property for assessment purposes. The gist of the decision is that since under section 4290 of the Political Code it was enacted that, "The salaries and fees provided in this title shall be in full compensation for all services of every kind and description rendered by the officers named in this title either as officers or *ex-officio* officers, their deputies and assistants, unless in this title otherwise provided, and all deputies employed shall be paid

by their principals out of the salaries provided in this title, unless in this title otherwise provided," that it was "obvious that to relieve the officer of the obligation to pay extra deputies and assistants, is to increase his salary to that extent" (in violation of said section 9) "irrespective of the question as to whether in that particular county he is given a lump sum from which he is to secure his own remuneration and pay all deputies and assistants, or whether he is given a fixed salary and a certain number of deputies or assistants also at fixed salaries, and is also required to pay additional deputies and assistants from his own salary". The act purporting to authorize the supervisors to appoint at their discretion such advisory board was also held to violate said section 5 providing for the regulation of the compensation of county officers by the legislature, in undertaking in the case of the assessor to delegate that function to the supervisors. Obviously, the reasoning is inapplicable to the compensation of the supervisors themselves, whose salaries are not provided for with any fixed relation to work to be done under their supervision, and whose essential duty, in contradistinction to most county officers, is to supervise work rather than to do it, all of which is recognized by language used in the later part of the opinion.

If it be true, as appellants claim, that a substantial part of the county highway system was constructed or improved under the act of March 19, 1907 (as to which there are again no findings) it would evidently follow, as they assert, that the board was entitled to employ a superintendent to care for the maintenance and repair of these particular parts of the system under the express provisions of section 2646 of the Political Code. That, however, would hardly strengthen their position in the instant case, for, since it is not claimed that the highway system as a whole, or even the major part of it, was constructed or repaired under the provisions of said act and since the duties of the superintendent extended to the whole system and not merely to any part of it, it would necessarily follow that unless the board were entitled to employ him (in subordination to themselves and the respective road commissioners) to have charge of it all, the case would be governed by such authorities as *Humboldt County* v. *Stern,* 136 Cal. 63 [68 Pac. 324], and *Teachout* v. *Bogy,* 175 Cal. 481, 486 [166 Pac.

319], illustrative of the general principle noted in the dissenting opinion in *Skidmore* v. *West, supra,* that "when a substantial part of the duties agreed . . . to be performed were contracted for in violation of the law, the contract being entire, the whole contract is void" (Civ. Code, sec. 1608). In the view, however, that we have taken of the employment here involved as a whole, we need not consider that situation, for it is our opinion that the arrangement was one of employment and that, so far as its nature can be gleaned from the record, it was a proper one.

The judgment is reversed.

Barnard, P. J., and Jennings, J., concurred.